Comstock, Oh. J.
 

 This case ought to be one of first impression. By the statute of frauds, all promises to answer for the debt of a third person are void unless reduced to writing. One Haines owed the plaintiff a debt for repairs on a boat, for which the latter had a lien on the chattel. In consideration of the relinquishment of that lien, and of forbearance to sue the origi
 
 *414
 
 nal debtor, the defendant promised the plaintiff, without writing, to pay the debt at a certain future time. There is no pretence that the defendant’s promise was given or accepted as a substitute for the original demand, or that such demand was in any manner extinguished. The promise was, therefore, to answer for the existing and continuing debt of another, or, in the language of the books, it was a collateral promise. The consideration was perfect, but as there was no writing, the case seems to fall within the very terms of the statute. Authorities need not be cited to prove that the sufficiency of the consideration never takes a case out of the statute. Indeed, there can be no question under the statute of frauds in any case, until it is ascertained that there is a consideration to sustain the promise. Without that element, the agreement is void before we come to the statute. A naked promise is void on general principles of law, although it be in writing. The mere existence of a past debt of a third person will not sustain an agreement to pay it, unless there be forbearance to sue, or some other new consideration. In such a case, when we find there is a new consideration, we then, and not till then, reach the inquiry whether the agreement.must be in writing.' Such is this case. It is nothing to say that here was a new consideration. If such were not the fact, there would be no question' in the case.
 

 There is sometimes danger of error creeping into the law through a mere misunderstanding or misuse of terms. The words “original” and “collateral” are not in the statute of frauds, but they were used at an early day—the one to mark the obligation of a principal debtor, the other that of the person who undertook to answer for such debt. This was, no doubt, an accurate use of language; but it has sometimes happened that, by losing sight of the exact ideas represented in these terms, the word “ original ” has been used to characterize any new promise to pay an antecedent debt of another person. Such promises have been called original, because they are new; and then as original undertakings are agreed not to be within the statute of frauds, so these new promises, it is often argued, are not within it, If the'terms of the statute were adhered to,
 
 *415
 
 or a more discriminating use were made of words not contained in it, there would be no danger of falling into errors of this description.
 

 What is a promise to answer for the “ debt or default” of another person ? Under this language, perplexing questions may arise, and many have arisen, in the courts. But some propositions 'are extremely plain; and one of them is, that the statute points to no distinction between a debt created at the time when the collateral engagement is made, and one having a previous existence. The requirement is, that promises to answer for the debt, &c., of a third person, be in writing. The original and collateral obligations may come into existence at the same time, and both be the foundation of the credit, of the one may exist and the other be created afterwards. In either case, and equally in both, the inquiry under that statute is,' whether there be a debtor and a surety,' and not when the relation was created. The language of the enactment is so plain that there is no room for interpretation; and its policy is equally clear. If A say to B, “ If you will suffer C to incur a debt for goods which you will now or hereafter sell and deliver to him, I will see you paid,” the promise is within the statute. This no one ever doubted. But if A say to B, “ If you will forbear to sue 0 for six months on a debt heretofore incurred by him for goods sold and delivered to him, I will see you paid is not the case equally plain? So if, in. such a case, instead of forbearance, there is some other sufficient consideration, for example forgiving a part of the debt or relinquishing some security for it, the difference is still one of circumstance, but not of principle. In the case first put, the consideration of the guaranty is the original sale of the goods on the faith of it: in the other, it may be forbearance or the relinquishment of some advantage, the original debt still remaining. Looking at the comparative merit of these considerations, it would seem to be the highest in the first case, for the whole debt owes its origin to the collateral promise, while in the other the debt remains as before, and only some collateral advantage is lost. But the application of the statute depends on no such test. These
 
 *416
 
 considerations are, all of them, sufficient, and simply sufficient, to sustain the auxiliary undertaking. But if they also dispense with a writing, then, so far as I can see, there are no cases to which this branch of the statute of frauds can be applied.
 

 Such an extreme position has not been taken; but it is said that the promise now in question need not be in writing, because it was new arid original, and was founded on the relinquishment to the debtor of a security which the creditor held. To say that it was new and original, expresses no idea of any importance. Every promise is new and original that was never made before. An undertaking to answer for ah old debt of a third person certainly has no more of originality than one to answer for a debt now contracted. As to the relinquishment of the lien or security, this, although a meritorious consideration, is, in judgment of law, no more so than any other which is sufficient to sustain a contract. Forbearance to sue has the same legal merit, and so has the release of a part of the debt.
 

 There is nothing so remarkable or peculiar about this case that it may not be included in some general proposition which involves a principle of law. Now, one of these two propositions must, I think, be true: 1. The statute of frauds never applies to a promise, the subject of which is an antecedent debt of a third person to which it is collateral; or, 2, It applies to all such promises where the consideration moves solely between the creditor and original debtor and the debt still remains. If the first is true, then the promise in question is valid without a writing, and so would any such promise be, without regard to the particular nature of the consideration; it being necessary, of course, that there should be some sufficient consideration. If the first be not true, and the second is, then the promise in this case is void, because it falls directly within it. The first proposition cannot be true, upon the plain terms and evident policy of the statute; and no such doctrine was ever asserted. The universal truth of the second one necessarily follows, unless the law will discriminate between different promises according as the consideration
 
 *417
 
 may differ in the particular nature or kind. But is such a discrimination possible, so long as, in any given case, the consideration is sufficient in the eye of the law, and moves solely between the original parties? Ho one, it seems to me, can hesitate to answer such a question in the negative. Yet we are told, without reason or principle, that when a creditor releases a security to the debtor, although without releasing the debt, a promise of another person, founded on that peculiar consideration, is not within the statute. The inevitable logic of such a proposition will include a like promise founded on any other consideration equally sufficient to sustain a contract; and, therefore, we are carried back to the first general proposition above stated, which is admitted to be false. It has already been observed, that, without a consideration, no question on the statute of frauds can arise.
 

 In this elementary view of the question, I do not understand that much difference of opinion exists. It is claimed, however, that the course of adjudication has been such, that we cannot determine the case before us according to a consistent rule of law. This argument is founded in a misapprehension of the authorities, some reference to which will be necessary.
 

 In this State, an early case, and one of very high authority, is that of
 
 Leonard
 
 v.
 
 Vredenburg
 
 (8 Johns., 29), in which Chief Justice Kent divided the cases on this branch of the statute of frauds into three classes, as follows: 1. Where the promise is collateral to the principal contract, but is made at the same time, and becomes an essential ground of the original credit. 2. “ Cases in which the collateral undertaking is subsequent to the creation of the debt, and was not the inducement to it, though the subsisting liability is the ground of the promise.” “Here,” the Chief Justice observed, “there must be some further [or new] consideration shown, having an immediate respect to such liability; for the consideration of the original debt will not attach to this subsequent promise. 3. Cases where the promise to pay the debt of another arises out of some new and original consideration of benefit or harm moving between the newly contracting parties,” “ The two first classes,” he further
 
 *418
 
 observed, “ are within the statute of frauds, but the last is not.”,, " I suppose, in the light of later decisions, that the opinion of that great jurist, delivered in the case cited, may contain some inaccurate remarks respecting the right to prove a consideration for a collateral agreement where none appeared in the writing. - It would be so considered, especially since the change we have made in the language of the statute of frauds, requiring the consideration to be expressed in the collateral instrument. But the above classification of the cases, and the connected remarks respecting each class, are strictly correct, and they have been a landmark of the law for forty years. Does the present case belong to the second class, which is within the statute, or to the third, which is not? Manifestly it belongs - to the second, because that is a class where the undertaking is subsequent to the creation of the debt. It does not fall without that class in consequence of the newness of the consideration, because, the learned Chief Justice said, “here must be some further [new] consideration having an immediate respect to such liability.” It cannot fall within the third class, because, if we arrange it there, we necessarily compress the two classes into one, or, more properly speaking, we merge the second wholly into the third. In such a disposition of the present question, no second class is left of collateral undertakings subsequent to the creation of the original debt, founded, as they must be, on some new or “further consideration.” .
 

 The classification referred to, on a casual reading, is perhaps open to some misapprehension, and I think it has been occasionally misapprehended. What, then, is the true distinction between the second and third classes? They are both of them promises, in form at least, to pay the antecedent debt'of a third person, and' in that respect they are alike. The distinction, therefore, is in the
 
 consideration
 
 of the promises which belong to the two classes; not in respect to its particular nature or ■ kind, but in respect to the parties between whom it moves. In the one class, the consideration is characterized as a “further one, having immediate respect to the [original] liability” of the debtor; in the other, as “new and original moving between
 
 *419
 
 the newly contracting parties.” In the second class, the' new, or “ further” consideration moves to the primary debtor. It may consist of forbearance to sue him, of a release to him of some security, or of any sufficient benefit to him or harm to the creditor, but in which the collateral promisor has no interest or concern. In the third class, the consideration, whatever its nature, moves to the person making the promise, and that also, .as in all other cases of contract, may consist of benefit to him or harm to the party with whom he is dealing. This distinction is also extremely well expressed by Chief Justice Shaw, of the Supreme Court of Massachusetts. One class of cases (within the statute), he says, is “ where "the direct and leading object of the promise is to become the surety or guarantor of another’s debtthe other class (not within the statute) is “where, although the effect of the promise is to pay the debt of another, yet the leading object of the undertaker is to subserve or promote some interest or purpose of his own.”
 
 (Nelson
 
 v. Boynton, 3 Metc., 396-400.) Chief Justice Savage, in this State
 
 (Farley
 
 v. Cleveland, 4 Cow., 432, 439), made the same classification. “In all these cases,” he observed, referring to those which fall within the third class,"“founded on a new and original consideration of benefit to the defendant or harm to the plaintiff,
 
 moving to the party maldng the
 
 promise, either from the plaintiff or original debtor, the subsisting liability ' of’ the original debtor is no objection to a recovery.” In one respect, this language of Chief Justice Savage has greater precision than that of Chief Justice Kent. The latter speaks of the consideration as “ moving between the newly contracting parties.” The former characterizes it as moving to the party making the promise. This description is more exact, as well as more comprehensive, because it includes a variety of cases found in the books, where the new consideration springs from the original debtor and not the creditor, as, for example, where the debtor, by conveyance of property or otherwise, places a fund in the hands of a third person, the latter promising, in consideration thereof,- to pay the debt. But the difference is not one of principle, because there is a sense in which,
 
 *420
 
 even in such cases, the new consideration moves from the creditor through the debtor to the person making the promise, and on that ground many cases hold that the creditor may himself sue on the promise, although it was made to the debtor.
 
 (Lawrence
 
 v.
 
 Fox,
 
 20
 
 N.
 
 Y.,
 
 268,
 
 and the cases cited.) Where the promise in this particular description of cases has been made directly to the creditor, the only question has been on the statute of frauds; and the rule is very properly settled that they are not within the statute. The cases of
 
 Farley
 
 v.
 
 Cleveland (supra), Gold
 
 v.
 
 Phillips
 
 (10 John., 412), and
 
 Olmstead
 
 v.
 
 Greenley
 
 (18
 
 Id.,
 
 12), belong to this class.
 

 Omitting, then, the first class of collateral undertakings—I mean those made at the same time with the creation of the debt—as having nothing to do with the present question, there are two kinds of promises of extensive use in the dealings of community, which, in form and effect, very much resemble each other; each being to answer for or pay a debt already due or owing from a third person, yet wholly different in respect to the motive and consideration. In the one class the ' promisor has no personal interest or concern, and his undertaking is made solely upon some fresh consideration passing between the creditor and his debtor. This class is within the statute. In the other, the promise may be in the same form, and, when performed, may have the same effect, but it is made as the incident of some new dealing in which the promisor is himself concerned, and upon a consideration passing between the. creditor or the debtor and himself. This class, which may include a great variety of particular examples, is not within the statute. The distinction is broad and intelligible, although the formal resemblance in such transactions may have occasionally led to inaccuracy of expression or decision. The great body of the cases, however, will be found to illustrate this distinction, and to establish it firmly as a guide in this branch of the law. If such a distinction were a questionable one, the tendency of the doubt would necessarily be in the direction qf holding both classes of cases to befwithin the statute, but
 
 *421
 
 never in the direction of placing without the statute any one of the cases belonging to the first of these classes.
 

 With this classification before us, it will be proper to notice more in detail the cases cited on the argument, and others not cited. In
 
 Skelton
 
 v.
 
 Brewster
 
 (8 Johns., 376), the promise was rheld not within the statute, because the debtor had delivered goods to the defendant as the consideration of the undertaking, and the plaintiff, the creditor, had discharged the debt. For two reasons, therefore, the promise by paroi was good: first, it was founded on a new consideration received by the promisor, and, second, it was accepted ás a substitute for the original debt, it could not be collateral.
 

 In
 
 Gold
 
 v.
 
 Phillips
 
 (10 Johns., 412), one Wood owed the plaintiffs. He conveyed land to the defendants, who, upon that consideration, bound themselves to him to pay that and other debts. Being thus bound, they so informed the plaintiffs, and agreed to pay them. The case, therefore, very distinctly falls within the third class, according to the distinctions above set forth.
 
 Bailey
 
 v.
 
 Freeman
 
 (11 Johns., 221) was on a written guaranty made at the same time with the principal contract, and it has nothing to do with the present question.
 
 Nelson
 
 v.
 
 Dubois
 
 (13 Johns., 175) is equally foreign to the inquiry. The plaintiff sold a horse to one Brundige, taking therefor the note of Brundige, payable to himself or bearer, and indorsed by the defendant. The legal proposition in the case was, that a guaranty might be written over the defendant’s name, it being a condition of the sale that he should become security for the price. In
 
 Myers
 
 v.
 
 Morse
 
 (15 Johns., 425), the plaintiffs were liable as indorsers of a note of one H. Morse, and they held a note of the same person indorsed by the defendant. The declaration set forth that the plaintiffs had agreed not to hold the defendant liable on his indorsement, in consideration of which, the defendant agreed to indemnify them against one-third of any loss they might sustain on their owii indorsement of the same person’s note. A plea of the' statute of frauds was held bad. This was plainly a case where the consideration moved to the defendant himself, and, therefore, it was held to
 
 *422
 
 fall within the third class of cases, according to the distinction which has been explained. • The definition of Chief Justice Kent, in
 
 Leonard
 
 v.
 
 Vredenburgh,
 
 was expressly adopted ■ and applied to the facts. In
 
 Olmstead
 
 v.
 
 Greenly
 
 (18 Johns., 12), the plaintiff was an accommodation indorser .on the note of B, and B also owed him a sum of money: ■ B thereupon placed money and property in the hands of the deféndant to provide for paying the note and the debt, and upon that consideration the defendant promised the plaintiffs to make such payment. The court said this was an original contract on an independent consideration "received by the defendant.
 
 Farley
 
 v.
 
 Cleveland
 
 (4 Cow., 432, and
 
 S. C. in error,
 
 9 Cow., 639), already mentioned, was entirely similar. The plaintiff held the note of one Moon, which the defendant promised to pay in consideration of fifteen tons of hay sold to him by Moon. The promise was held to be not within .the statute. The reporter’s note truly expresses the principle of the decision. It is as follows: “Where a promise to pay the debt of a third person arises out of some new consideration of benefit to the promisor or • harm to the promisee, moving to the promisor, either from the promisee or the original debtor, such promise is not within the statute of frauds, although the original debt still subsists and remains entirely unaffected by the new agreement.” In
 
 Chapin
 
 v.
 
 Merrill
 
 (4 Wend., 657), the promise was not within the statute, because it was not collateral to any debt or liability of a third person to the promisee. The third person proposed to contract a debt with fourth parties, and the plaintiff agreed to guarantee that debt, the defendant at the same time agreeing to indemnify him for so doing. The plaintiff might have invoked the statute, if his guaranty had not been in writing. But the defendant was his indemnitor merely. It was a contingent *liability, of necessity original, because there was nothing to which it could be collateral. There was no debt of the third person to the plaintiff. The case, therefore, had not even the formal resemblance to the present one, which, existing in other cases, has misled the plaintiff’s counsel. The cases of
 
 Gardiner
 
 v.
 
 Hopkins
 
 (5 Wend., 23),
 
 Elwood
 
 v.
 
 Monk (Id.,
 
 235),
 
 King
 
 v.
 
 Despard (Id.,
 
 
 *423
 
 277), and
 
 Meech
 
 v.
 
 Smith
 
 (7
 
 Id.,
 
 315), are, all of them, in prim ciple, with differences of detail, like
 
 Farley
 
 v.
 
 Cleveland (supra)
 
 In each of them, the consideration of the new promise moved to the defendant, proceeding either from the original debtor or the creditor, and the decisions were placed distinctly on that ground.
 

 It cannot fail to be seen, that nearly all the cases which have been mentioned, in fact all of them which exhibit a promise to pay or answer for the debt of another person, are essentially of one type. With great variety in the circumstances, one controlling characteristic pervades them all. In every instance, the consideration of the promise was beneficial to the person promising. This was the feature which imparted to the promise the character of originality, as that term is used with reference to the statute of frauds. In not one of them is it title that the undertaking was entered into upon a consideration merely beneficial to the debtor but of no concern to the promisor; and I can confidently say that not one of those cases contains even a
 
 dictum
 
 which, being understood, countenances the doctrine contended for on the part of the plaintiff in this case. The principle involved is the same which runs through other cases that have not been cited. For example, A, holding the note of B, transfers it to C, upon a consideration moving from G to him, and with a paroi guaranty of the payment. This, in a merely formal sense, is a promise to answer for the debt of the maker of the note, and it has been strenuously contended that such a promise is within the statute. But the rule is otherwise; it being considered that such transactions, however close to the letter, are not within the intent of the statute; because they have their root in a new dealing which concerns the promisor, and in a new consideration which moves to him.
 
 Brown
 
 v.
 
 Curtiss
 
 (2 Comst., 225) was such a case, in which Judge Bronson remarked: “This belongs to the third class of cases mentioned by Kent, Ch. J., in
 
 Leonard
 
 v.
 
 Vredenburgh:
 
 there was a new and distinct consideration independent of the debt of the maker, and one moving between the parties to the new promise. Such arc also the cases of
 
 Johnson
 
 v.
 
 Gilbert
 
 (4 Hill,
 
 *424
 
 178), and the very recent one in this court of
 
 Cardell
 
 v.
 
 McNeil,
 
 decided at the last term
 
 (ante, p.
 
 336).
 

 I have not yet referred to the case of
 
 Slingerland
 
 v.
 
 Morse
 
 (7 Johns., 463), which seems to be much relied on; but it does not present the question now before us. The plaintiff had distrained the goods of his tenant for rent, but did not remove them. Thereupon the defendants signed a writing in these word»: “ We do hereby promise to deliver to Peter Slingerland all the goods and chattels contained in the within inventory in six days after demand, or pay the said Peter $450.” Looking at the face of that writing, it is only surprising that any one could ever think it was within the statute of frauds. In its very terms it was original, and not collateral. It discloses no debt of any one else than the defendant who signed it. Looking outside of it, we learn there was at least a claim made for rent due from another person, but it is quite obvious that, as a substitute for that claim, the creditor accepted the original promise of the defendant to deliver the goods or pay a sum of money. This is the evident import of the agreement itself, for it recognizes no continuing debt or liability of the tenant, nor does it undertake to pay his debt or answer for him in any way. The goods were the fund. The defendant took them under his own control (a fact which the agreement assumes), and upon that consideration made himself the primary debtor, and not the guarantor or surety. I think the .case was well decided, although it is very obscurely and scantily reported.
 

 So far, then, we find no cases or
 
 dicta
 
 in point. Yet it would not be true to say that the plaintiff’s position is wholly unsupported by any authority in the courts of this State. In
 
 Mercein
 
 v.
 
 Andrus
 
 (10 Wend., 461), SAVAGE, Ch. J., made this remark on a motion for a new trial: “The judge correctly stated to the jury that where the promise of one person to pay the debt of another was founded upon the consideration of surrendering up property levied on by an execution, the promise was an original undertaking, and need not be in writing to be valid.” Of course, no such point was decided, because the decision granted a new trial upon another question not mate
 
 *425
 
 rial to the present inquiry. The Chief Justice cited no authority. If he meant to lay down the doctrine, that a new consideration, moving from the creditor to the debtor, the debt still remaining, would sustain .the unwritten promise of another person to pay the debt, there was no authority to be cited, for no such proposition had ever been advanced in this State. If, however, the charge at the trial and the observation of the Chief Justice assumed, as the law was, that the levy of an execution extinguished the debt, and that the release of the levy remitted the creditor to the new promisor as his only remedy, then the remark was strictly correct, but it has no application to this case. Such is probably the true explanation ; and we shall presently see there are English cases under the statute standing on that ground. The plaintiff’s counsel has been able, however, to cite one case which is entirely to his purpose. In
 
 Fay
 
 v.
 
 Bell
 
 (Lalor’s Supp. to Hill and Denio, 251), the plaintiff had a lien on a pair of boots which he had mended, and in consideration of releasing that lien and giving up the boots, the defendant promised to pay his demand, which amounted to fifty cents. So far as appears, the. debt still remained. The case went up from a justice’s court! through the Common Pleas, to the ' Supreme Court,. where the question was disposed of with the single observation that the promise was “ a new undertaking, founded on a new and distinct consideration, the relinquishment by the plaintiff of his lien on the boots, and which was sufficient to uphold the promise made.” The remark, as made, is strictly true. The consideration was clearly sufficient to uphold the promise, but the statute of frauds requires not only a consideration but a writing! The case was of very slight importance, and the principles of the question were not examined. In the same book is another case, precisely the other way, the opinion being given by another judge. In
 
 Van Slyck
 
 v.
 
 Pulver
 
 (Lalor, 47), the promise was made in consideration that the plaintiff would suspend proceedings on an execution against his debtor. This forbearance was admitted to be a sufficient consideration, and it was certainly a new one; but the promise was held void within the statute.
 

 
 *426
 
 In all the judicial history of this State, then, there is but one adjudged case which sustains the doctrine contended for, “ and that is one entitled to no great consideration. I will now refer to several of a very decisive characterj which furnish a true exposition of the statute, and show that the rule is the other way. One case I have jtist mentioned, which is directly in point, and is of a date comparatively recent Going back to an early day, in
 
 Simpson
 
 v.
 
 Patten
 
 (4 Johns., 422), the plaintiff forebore to sue his debtor, and upon that consideration the defendant promised to pay the debt as soon as he could sell a piece of land which belonged to the debtor. The promise was held Void within the statute of frauds, the court observing. “ A promise to pay the debt of a third person must-be in writing, notwithstanding it is tiiade on a sufficient consideration.” I have some hesitation in citing
 
 Jackson
 
 v.
 
 Rayner
 
 (12 Johns., 291), because it seems to me to have gone too far. The defendant had received an assignment of the debtor’s property, and upon that consideration, as well as forbearance, the 'defendant promised to pay the demand. The court regarded the unconditional promise as evidence that the fund was adequate. Upon the discrimination made in the later cases (heretofore cited), the conveyance of the property to.the defendant was a new consideration, moving to him from the debtor, and made the promise an original one. Nevertheless, on the ground that the original debt still remained, the promise was held void under the statute. In
 
 Smith
 
 v.
 
 Ives
 
 (15 Wend., 182), the declaration was on a written guaranty of a note, the consideration alleged being forbearance to sue the maker. Plea, that no consideration was expressed in the writing. The plea was held good; the court saying: “ Forbearance has never been considered a new consideration passing between
 
 the newly contracting
 
 parties, so as to take the case out of the statute.” In
 
 Packer
 
 v.
 
 Wilson
 
 (15 Wend., 343), a guaranty of the same nature, and upon the same consideration, was again held to be void. In
 
 Watson
 
 v.
 
 Randall
 
 (20 Wend., 201), these propositions were expressly affirmed: 1. An agreement to forbear to sue a debtor is a good consideration for the promise of a third person to pay
 
 *427
 
 the debt, but, to render the promise obligatory, it must be in writing. 2. While the debt remains a subsisting demand against the original debtor, the promise of» a third person is collateral, and must be in writing. In
 
 Barker
 
 v.
 
 Bucklin
 
 (2 Denio, 45), a new trial was ordered, upon a point not now material; but the present question was quite fully examined by Mr. Justice Jewett. According to his views, the promise in this case is clearly void. If I were to criticise his opinion, I should say he goes somewhat too far, by reason of not discriminating so as to uphold promises where (the original debt still remaining) the new consideration moves from the creditor to the promisor, as well as from the primary debtor. In
 
 Kingsley
 
 v.
 
 Balcome
 
 (4 Barb., 131), the principal cases were reviewed by Mr. Justice Sill, and his conclusion is thus stated: “ The true rule is, that the new original consideration spoken of must be such as to shift the actual indebtedness to the new promisor, so that, as between him and the original debtor, he must be bound to pay the debt as his own, the latter standing to him in the relation of surety.” I do not think this a perfect definition of an original promise to pay a sum for which another was previously bound as the primary debtor, because, as 1 have shown, there are many cases which such a definition does not include. The more we examine the original classification of Chief Justice Kent, in
 
 Leonard
 
 v. Vredenburgh, the more we shall find it the result of a profound and masterly view of the subject; it being necessary, however, to the completeness of his definition, that the new or original consideration may move to the promisor as well from the debtor as the creditor, the fundamental requisite being that such consideration must not be one wholly existing or moving between the debtor and the creditor.
 

 These numerous authorities are decisive. They all present examples where the collateral undertaking was founded on a con- ' sideration sufficient to sustain the promise, but of no personal concern to the promisor; yet the promises Were void, because they fell within the precise terms and the undoubted policy of the statute of frauds. Certainly, that statute was not enacted for
 
 *428
 
 cases where the promise would be void at the common law for want of a consideration to sustain it. If it was not enacted for the very cases where a new consideration arises, additional to the original debt, that being insufficient according to all authority, then why was it ever passed ? Indeed, the struggle in’ the courts has been to withdraw from its influence, not such cases as these, but others having a close formal resemblance, yet ■distinguishable, not because there is a consideration, but because it moves to the promisor, and so gives to his undertaking an original character. A person who receives a consideration may be bound by any lawful promise founded upon it, and that proririse may as well lie to pay another man’s debt as to do any other act. The success of this struggle, in a variety of instances not within the intent of the statute, should not overthrow the very object for which it was enacted.
 

 This discussion would be incomplete without referring to the rule elsewhere than in this State. I have already mentioned the case of
 
 Nelson
 
 v.
 
 Boynton
 
 (3 Metc., 396), which may be regarded as settling the question in Massachusetts. The creditor in that case sued his debtor and seized his property under an attachment. The defendant promised to pay the debt in consideration of a discontinuance of the suit. The suit was discontinued accordingly, and the lien of the attachment was thereby lost, but the. debt remained against the original debtor. It was held, upon the fullest consideration, Chief Justice Shaw giving the opinion, that the promise was void because it was not in writing. I regard the decision as of great value, because the cases were examined, and the discrimination between the different classes was made with entire accuracy.
 

 Upon the argument of the present case, a passage from an English text-book was read (Addison on Contracts, p. 38), to the effect that, if the creditor has a lien or security which he is induced to part with on the faith of a promise of another person to pay the debt, the promise so made is not within the mischief intended to be provided against by the statute of frauds, and may be good by paroi. This extract, according to its apnarent hieaning, seemed to indicate that in England the
 
 *429
 
 statute of frauds was essentially disregarded. The authorities referred to by the writer to sustain the proposition, are:
 
 Barker
 
 v.
 
 Birt
 
 (10 Mees. & W., 61);
 
 Haigh
 
 v.
 
 Brooks
 
 (10 Ad. & E., 309-335);
 
 Barrell
 
 v.
 
 Trussel
 
 (4 Taunt., 117);
 
 Meredith
 
 v.
 
 Short
 
 (1 Salk., 25);
 
 Castling
 
 v.
 
 Aubert
 
 (2 East., 325); and
 
 Walker
 
 v.
 
 Taylor
 
 (6 Carr. & P., 752). I have looked at these cases, and find that none of them have the slightest connection, with such a proposition, except the two last, which are alike, and do not sustain it. In the last case, the creditor had the possession and a lien upon certain licenses as a security for his demand, and he gave them up to the defendant, who promised to pay the debt. The case was'at
 
 nisi prius.
 
 Tindal, Ch. J., said: “It is a new contract, under a new state of circumstances. It is not, ‘ I will pay, if the debtor cannotbut it is, 1 in consideration of that which is
 
 an advantage to
 
 me, I will pay you this money.’ ” “ There is a whole class of cases in which the matter is excepted from the statute on account of a consi deration arising
 
 immediately between the
 
 parties.” Here is the very distinction so well established in our own cases. It should be added, that the text-writer referred to could not have intended what his language apparently means; for he adds, in the same connection: “In these cases, the plaintiff must so shape his case as not to show or admit that there is a principal debtor liable, and that the promise of the defendant is a promise to pay that debt.”
 

 The early case in England, of
 
 Williams
 
 v.
 
 Leper
 
 (3 Burr., 1886), is cited and relied on to sustain the plaintiff’s position; and it is, perhaps, the only one in the English courts capable of a misinterpretation'. But the case does not, in fact, sustain any such doctrine, and it has never been so understood in the courts of that country. One Taylor owed the plaintiff £45 for rent. He conveyed all his effects for the benefit of his creditors, who employed Leper, the defendant, to sell them; and he advertised them for sale accordingly. ■ The plaintiff then came to distrain, and the defendant promised to pay the rent if he would not distrain; and he desisted accordingly. Lord Mansfield said the defendant was a trustee for all the creditors,
 
 *430
 
 and was obliged to pay the landlord, who had the prior lien. Justice Wilmot said, the defendant became the bailiff of the landlord, and, when he had sold the goods, the .money was the landlord’s in his own bailiff’s hands. Therefore, he said, an action would have lain against the defendant for money had and received to. the plaintiff’s use. Justice Yates said, it was an original consideration to the defendant. Justice Aston thought the goods were a fund between both, “ and on that foot he concurred.” From the reasoning of these judges, it seems to me perfectly evident that, if the tenant had not assigned his goods, and the defendant had no connection with them as trustee or otherwise, but the plaintiff had simply released his distress, or right to distrain, for the benefit of the debtor alone, the promise to pay the debt on that consideration would have been held within the statute. But as the facts were, the law would imply an obligation on- the defendant’s part to pay over the money to the plaintiff after selling the goods; and where the law will imply a debt or duty against any man, his express promise to pay the same debt, or perform the same duty, must, in its nature, be original. The distinguishing feature of the case was, that the creditor relinquished his distress, not to the debtor, but to other creditors of the same debtor who beneficially owned the goods, and the defendant was the representative of those creditors, having the fund in his possession. If this early case had not been sometimes misapprehended, it is probable that no doubt would ever have arisen in questions like the one before us.
 

 The cases also cited, of
 
 Houlditch
 
 v.
 
 Milne
 
 (3 Esp., 86),
 
 Castling v
 
 .
 
 Aubert
 
 (2 East., 325),
 
 Edwards
 
 v.
 
 Kelly
 
 (6 M. & Sel., 204),
 
 Bird
 
 v.
 
 Gammon
 
 (3 Bing., N. C., 883),
 
 Bampton v. Paulin
 
 (4 Bing., 264),
 
 Walker
 
 v.
 
 Taylor
 
 (6 Carr. & P., 752), and
 
 Stephens
 
 v.
 
 Pell
 
 (2 Cromp. & Mees., 710), differing only in immaterial circumstances, all involved the same general principles as
 
 Williams
 
 v.
 
 Leper.
 
 In each of them the creditor relinquished some lien or advantage incident to his debt; but in each of them, whatsoever he. relinquished was acquired by the defendant—either as a matter of personal interest and concern to himself or to
 
 *431
 
 other parties whom he represented—and on that consideration he promised to pay. In none of them was any such doctrine . asserted as the plaintiff contends for in this case. In all of them the engagement was deemed original, either because the primary debt was gone or because the consideration moved to the promisor; and in some of them the decision was put on both these grounds. These cases not only elucidate more perfectly the principle of
 
 Williams
 
 v. Leper, but they are in themselves illustrations of the distinction which, as we have seen, is recognized in our own courts. Beferring now to
 
 Read
 
 v.
 
 Nash
 
 (1 Wilson, 305), it was the case of a promise to pay to the plaintiff a certain sum if the latter would withdraw his record in an action of assault and battery against another person, and would not proceed to trial. This promise was held not to be within the statute of frauds; the decision being placed on the ground that the person sued for the assault was not a debtor at all within the meaning of the statute, and could not-be so considered until after verdict against him. “ For aught we can tell,” the court said, “ the verdict might have been in his favor.” The promise, therefore, stood' as at the common law. In
 
 Goodman
 
 v.
 
 Chase,
 
 a debtor, taken on a
 
 ca. sa.
 
 at the suit of the plaintiff, was discharged with the plaintiff’s consent on the defendant’s promise to pay the debt. This was held an original promise, because the debt itself was extinct and satisfied by the
 
 ca. sa.
 
 and its discharge; and - the principle of the decision is a very plain one.
 

 I have now referred to all the decisions in the English courts which can be supposed to favor in any degree the doctrine on which the.plaintiff in this case relies; and I think it may be safely affirmed, that no case has ever been determined in those courts tending to the proposition that a paroi promise to pay the debt of anothef person is valid where the consideration is beneficial only to the debtor, and where there is a debt which still remains against him. I will now mention a few cases, among many others, which show what the law of England is upon the precise question now to be decided,
 

 In
 
 Fish
 
 v.
 
 Hutchinson
 
 (2 Wilson, 94), the plaintiff had com
 
 *432
 
 menced a suit against his debtor, and the defendant, in consideration that he would stay that suit, promised by paroi to pay the debt. The whole Court of King’s Bench were, of opinion .that the undertaking was void by the statute of frauds; observing that there was a debt still subsisting against another person and a promise to pay it. The consideration was mani- • festly good, but that, moving as it did to the debtor only, did not sustain the promise without a waiting. This case was decided just one hundred years ago, and the principle of it was never departed from in succeeding times. Coming down to a recent period, in
 
 Clancy
 
 v.
 
 Piggott
 
 (2 Ad. & Ellis, 473), one Moore was indebted to the plaintiff, for which the latter held his goods in pledge. In consideration of surrendering the pledge
 
 to
 
 the debtor, the defendant promised, by a writing which did not express the consideration, to pay the plaintiff his debt.
 
 Williams
 
 v.
 
 Leper,
 
 and the other cases above referred to, belonging to that class, were cited to sustain the undertaking ; but the court held it within the statute and void.
 
 Williams
 
 v. Leper, and the kindred decisions, were not overruled, or even questioned,' and the case, therefore, shows how those decisions are understood in England. In
 
 Tomlinson
 
 v.
 
 Gell
 
 (6 Ad.
 
 &
 
 Ellis, 564), the plaintiff’s client was indebted to him for costs in a pending chancery suit, and in consideration' of a discontinuance of that suit, the defendant promised to pay those costs to the plaintiff. Held void within the statute, Pattbbsoit, J., observed; <( It is said that a new consideration arose from the discontinuance of the suit. But I do not think it is a new one. The cases on that point are where something has been given up by the plaintiff,
 
 and acquired ly the party malting the
 
 promise, as á security of goods for a debt. ”
 

 Without pursuing this discussion further, the general rule is, that all promises to answer for the debt of default of a third person must be in writing, whether the-promise be made before, at the time, or after the debt or liability is created. Such is the rule, because so is the statute of frauds. The statute makes no exception of any promise which is of that character. The courts have made no exceptions; as clearly they should not.
 
 *433
 
 But a considerable variety
 
 of
 
 undertakings, having points of resemblance and analogy to such promises, have been held not to be within the statute. These may be chiefly, if not wholly, arranged in the following classes: 1. Where there was no original debt to which the auxiliary promise could be collateral; for example where the promisee was a mere guarantor for the third person to some one else, and the promisor agrees to indemnify him, or where his demand was founded in a pure tort. 2. Where the original debt becomes extinguished, and the creditor has only the new promise to rely upon; for example where such new undertaking is accepted as a substitute for the original demand, or where the original demand is deemed satisfied by. the arrest of the debtor’s body or a levy on his goods, the arrest or levy being discharged by the creditor’s consent. 3. Where, although the debt remains, the promise is founded on a new consideration which moves to the promisor. This consideration may come from the debtor, as where he puts a fund in the hands of the promisee, either by absolute transfer or upon a trust, to pay the debt, or it may be in his hands charged, with the debt as a prior lien, as in the case of
 
 Williams
 
 v.
 
 Leper,
 
 and many others. So the consideration may originate in a new and independent dealing between the promisor and the creditor, the undertaking to answer for the debt of another being one of the incidents of that dealing. Thus, A, for any compensation agreed on between him and B, may undertake that 0 shall pay his debt to B. So A, himself being the creditor of 0, may transfer the obligation to B upon any sufficient consideration, and guarantee it by paroi. If we go beyond these exceptional and peculiar cases, and withdraw from the statute all promises of this nature, where the debtor alone is benefited by the consideration of the new undertaking, and the debt still subsists, then we leave absolutely nothing for the statute to operate upon.
 

 The judgment should be affirmed.
 

 Selden, Dehto, Clerks and Welles, Js., concurred.