## JEREMIAH P. ROBINSON AND OTHERS, RESPONDENTS, *v.* THE SPRINGFIELD IRON COMPANY, APPELLANT.

*Authority of an agent — includes the necessary and usual means of effecting the object for which it was given — lien for wharfage — a part may be held for the wharfage on the whole — statute of frauds — what furnishes a new consideration.*

Upon the trial of this action a verdict was rendered for the plaintiffs for $910 for wharfage upon some 600 tons of iron rails, laden upon their wharf for, and which were received by, the defendant. The rails were not placed upon the wharf by the defendant's direction, nor was the defendant liable for the wharfage. The plaintiffs claimed under a contract made, after all but seventy five tons of the rails had been removed, with an agent of the defendant, by which, upon the plaintiffs consenting to waive their lien upon the seventy-five tons for the wharfage of all the rails and allow the same to be removed, the agent agreed that the defendant would pay the whole sum due; the agent then saying that it was of more importance for them to get the iron through before the canal closed than to dispute the bill.

It appeared that the agent had been sent to New York for the purpose of hurrying forward the rails in all possible ways, and had been instructed to see that there were no delays in shipping them as it was important for the defendant to secure them at once.

*Held,* that the authority of the agent was sufficient and that his contract was binding upon the defendant.

That the plaintiffs' claim that they were entitled to a lien on the seventy-five tons for the whole wharfage was well founded.

That the agreement was not within the statute of frauds, as the waiver of the plaintiffs' lien furnished a new and original consideration moving between the contracting parties.

APPEAL from a judgment in favor of the plaintiffs, entered upon the verdict of a jury and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

*G. Zabriskie*, for the appellant.

*Frank D. Sturges*, for the respondents.

DANIELS, J. :

The verdict was recovered for the sum of $910 due to the plaintiffs for wharfage upon iron rails laden upon their wharf, and received by the defendant, and for interest upon that amount. The rails discharged from the vessel upon the wharf amounted to about 600 tons, and they were all removed with the exception of about seventy-five tons when the plaintiffs interposed and refused to permit the removal of the residue until their charges for wharfage were paid. Upon this subject they wrote a letter to the defendant upon the 7th of September, 1880, inclosing a bill for the amount then claimed to have matured, and on the twentieth or twenty-first of the same month a contract was alleged to have been made upon which the defendant became liable to pay for the wharfage. The rails were not placed upon the wharf under the authority, or subject to any liability, on the part of the defendant, for the wharfage. And it was not otherwise liable to make such payment at any time, than by the contract relied upon as the foundation of the action. This contract was stated to have been made on behalf of the defendant with the plaintiffs, through its agent Walter E. Mack. The evidence to prove it was objected to at the trial, but it was received subject to the defendant's exception, and, of course, subject to proof of the authority of Mack to bind the defendant for the payment of the wharfage. Mack was informed by one of the plaintiffs that the residue of the iron could not be removed without payment, and he, as a witness upon the trial, stated that Mack replied to him : " The Springfield Iron Company is good for the amount of this. You don't want to hold the iron for this bill," and I said " we will have to hold the iron until you pay us; we have a lien on the iron for these charges and we cannot let it go until you pay us." The witness stated that Mack replied, " it is of more importance to us to get this iron through, as it is late in the season and the canal is going to close, than it is to dispute over this bill, and we will pay the bill ; " and upon that the witness stated the iron was allowed to be removed. There was some difference in the evidence as to what the conversation was, but that dif-

ference had no other effect than to create a question of fact for the jury to determine, and as they found in favor of the plaintiffs, their determination probably was that this evidence truly disclosed the nature and conclusion of the interview, relied upon as a contract on the part of the defendant to pay the charges. The president of the defendant, whose deposition was read upon the trial, testified that while the duties of Mack were merely to make sales of the goods of the company, " he performed such special services in connection with its business as its interest required, and derived his power and authority in all cases from instructions issued by me as president " or by the secretary. He then added, by his answer to another interrogatory, that Mack was sent to New York by me on or about the 7th of September, 1880, mainly for the purpose of hurrying forward the old rails which had been bought, as before stated, by said Evans ; his instructions were verbal and were given by me, and were to the effect that he should see that there were no delays in shipment, and to that end he was to confer and act with said Evans and the parties who who were to transport the rails from New York westward ; he had no authority except to hurry the rails forward in all possible ways.

The witness further stated that the " rails were badly needed for use at defendant's works, as aforesaid, and in order that there might be no delay in their shipment Walter E. Mack was sent to New York to see to it that they were forwarded promptly, and was instructed to use his best efforts to that end." And Mack testified that at the time he " came to New York the company was depending upon these lots of rails to keep the mill in motion, to run it to its capacity, in order that contracts which had been taken previously might be fulfilled as agreed." This evidence was not contradicted, and it probably disclosed with accuracy the authority given to Mack to obtain possession of and forward the rails. That could not be done, as the evidence tended to exhibit the attitude of the plaintiffs, without either payment or an agreement to pay their charges for wharfage. What Mack was authorized to do could be accomplished in no other manner, and accordingly it did include the authority to enter into the contract or agreement upon which the action was brought. For whatever may be necessary to complete an act an agent is authorized to perform, is included within

the authority of the agent. Upon this subject, after considering the different ways in which authority may be given to an agent to act for another, it has been stated as the law that "whether it is conferred in the one way or in the other it is, unless the contrary manifestly appears to be the intent of the party, always construed to include all the necessary and usual means of executing it with effect." (Story on Agency [4th ed.], sec. 58.) Providing for the payment of the plaintiff's claim for wharfage was not only a necessary, but it was the only means by which the agent could obtain and forward the rails, and within this principle he was authorized to enter into a contract for the payment of the indebtedness. Cases have been cited and relied upon in support of the defense, which are supposed to be in conflict with this principle, but they are not so, for the acts which were disaffirmed in those cases were extraneous acts not included within or necessary for the performance of those to which the authority related. This act was of a different character. It related to the precise thing and the precise authority for which the power was given to the agent, and without its performance or the creation of the obligation, possession of the iron could not have been obtained by him for the defendant. What the nature of the agreement was which Mack made to obtain possession of the iron was disputed upon the trial, but as the facts were affirmed by the witnesses it was a question for the jury whether the agreement relied upon was the agreement of the company to pay, or was the individul agreement of the agent himself. He was present under the authority of the company, acting in its behalf, having no personal interest himself in the transaction, and the language stated to have been made use of by him sufficiently indicated the design to be to keep himself within the limits of his authority in what he said concerning the payment of the plaintiffs' charges. The jury adopted the view that he had acted solely and wholly as the defendant's agent in what he did and said, and that the contract to pay, which the evidence tended to prove, was the contract of the defendant and not of the agent. Upon this subject the conclusion of the jury must be accepted as final, settling the rights and obligations of the parties as to this part of the controversy.

The right of the plaintiffs to claim the amount of their charges as a lien upon the remaining seventy-five tons was disputed at the

trial.   The statute defining the lien and its extent in no way affects this part of the controversy.   It merely provides for the existence of the lien and the limit to the charges which may be made. (Laws 1872, chap. 320, § 2.)   And that subjected the lien to the existing rule sanctioned by the courts as a general principle of law. And under that the lien of the plaintiffs for their charges extended to every part of the iron.   And they had the legal right to detain the seventy-five tons for the payment of their demand.   (*Schmidt* v. *Blood*, 9 Wend., 268.)   The agreement to pay was not within the statute of frauds for the obligation was created upon the waiver of the plaintiff's lien.   It was a new and original consideration of benefit, moving between the newly contracting parties and obligated the defendant to pay, even though its promise was not in writing. (*Mallory* v. *Gillett*, 21 N. Y., 412, 417 ; *Prime* v. *Koehler*, 77 id., 91.)

These are the controlling points in the case, and as the defendant was liable when it was found that Mack had entered into this contract on the defendant's behalf, the right of the plaintiffs to recover resulted legally from that circumstance.   It is not necessary for this reason to examine the exceptions which were taken to the exclusion or admission of evidence, during the progress of the trial, or to the charge or refusals to charge at its close, for the right of the plaintiffs by the charge was made dependent wholly upon the existence of the agreement alleged to have been made.   If that should not be found by the jury, then they were directed to render their verdict for the defendant.   But if it was found by them, as it must now be assumed to have been, it necessarily followed at once that the plaintiffs were entitled to recover the amount of their charges.

What the court said concerning the relation of Evans to the transaction was entirely immaterial.   The case was wholly disposed of by the contract entered into for the payment of the charges. And as the verdict of the jury cannot be set aside, both the judgment and order should be affirmed.

DAVIS, P. J., and BRADY, J., concurred.

Judgment and order affirmed.