DETERMINED IN THE

# FIFTH DEPARTMENT,

AT

# GENERAL TERM,

## June, 1886.

---

## HUGH TIGHE, RESPONDENT, v. JAMES MORRISON, APPELLANT.

*Statute of frauds — a promise to answer for the debt of another is not within the statute, when the promisor derives a benefit from the act of the promisee.*

This action was brought to recover the amount which the plaintiff had been compelled to pay upon a bond signed by himself and one McLaughlin, as sureties, upon the issuing of letters of administration to the defendant and two other persons. On the final settlement of their accounts it was adjudged that there was due from one of the administrators (not the defendant) a certain sum of money which he was directed to pay over. He having failed so to do, and the other surety being insolvent, the plaintiff was compelled to pay the amount sought to be recovered in this action.

It appeared that the plaintiff signed the bond at the request of the defendant, who said that by signing it he would do him a great favor as it would enable him to get money out of the estate, and that he (the defendant) would guaranty that the plaintiff should never lose one cent by signing it.

*Held,* that as the defendant's promise was made in consideration of benefits to be derived by him from the act of the plaintiff, the promise did not fall within the statute of frauds and that the plaintiff was entitled to recover.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict of the jury at the Livingston Circuit, and from an order denying a motion for a new trial made upon the minutes of the court.

*S. Hubbard,* for the appellant.

*E. A. Nash,* for the respondent.

HAIGHT, J.:

This action was brought to recover the amount which plaintiff had been compelled to pay as surety upon an administrator's bond.

In June, 1875, Ann McKittrick, Michael Dowdall and the defendant James Morrison were appointed administratrix and administrators of the goods, chattels and credits of Hugh McKittrick, deceased, upon condition that they execute and file with the surrogate of Livingston county a bond, with two sureties, in the penal sum of $3,000. This bond was subsequently executed and filed, signed by the plaintiff and one William McLaughlin, as sureties. On the final settlements of the accounts of the administrators before the surrogate, it was by that court adjudged and decreed that there was due and owing from Michael Dowdall, as administrator, the sum of $1,582.35, which sum he was ordered to pay over within twenty days from the service upon him of a copy of the decree. Execution was subsequently issued thereon to the sheriff, which was returned unsatisfied. Action was then brought upon the bond against this plaintiff as surety; the other surety being insolvent this plaintiff was compelled to pay the sum of $1,200, which sum was paid to compromise and settle the aforesaid action. Upon the trial of this action evidence was given on behalf of the plaintiff and other witnesses, to the effect that the defendant Morrison called upon the plaintiff and stated that he had been chosen administrator of Hugh McKittrick and wanted the plaintiff to sign his bond. That the plaintiff told him he did not understand much about such papers; that he then told the plaintiff that he had an interest in the estate for cattle, oats and butter which the estate owed him, and that it would do him a great favor if the plaintiff would sign his bond; and he said " I will guaranty before your boys that you never shall lose one cent if you will sign my paper, and you will do me a great favor as I will get money out of the estate." The plaintiff thereupon consented to sign the bond; got in the buggy, went to the village with him, and executed the same. It is true this evidence was controverted by the defendant, but the question was submitted to the jury under proper instructions, and the jury, by their verdict, has found that this testimony was true. The question is thus presented as to whether or not the agreement of the defendant was within the statute of frauds.

The statute provides that every special promise to answer for the debt, default or miscarriage of another person, shall be void unless such agreement, or some note or memorandum thereof, be in writing and subscribed by the party to be charged therewith. The devastavit which the plaintiff was required to make good was committed by Dowdall. If, therefore, the promise of the defendant was simply a promise to guaranty, as against Dowdall, it would come within the statute and the plaintiff could not maintain the action. But it is claimed that the promise was made to induce the plaintiff to sign the bond as surety for the defendant, and that by so doing the defendant was to reap a benefit to himself. He could be appointed administrator of the estate; could receive the commissions that were allowed for his services, and also make good his claims against the estate.

In the case of *Leonard* v. *Vredenburgh* (8 Johns., 29–39) Chief Justice Kent says, that "when the promise to pay the debt of another arises out of some new and original consideration of benefit or harm moving between the newly contracting parties" the case is not within the statute.

In the case of *Farley* v. *Cleveland* (4 Cow., 432) the rule, as stated by Chief Justice Savage, was that where a promise to pay the debt of a third person arises out of some new consideration of benefit to the promisor or harm to the promisee, moving to the promisor either from the promisee or the original debtor, such promise is not within the statute of frauds. And to the same effect is the case of *Nelson* v. *Boynton* (3 Metc., 396–400). These cases were all reviewed and approved by Chief Justice Comstock in the case of *Mallory* v. *Gillett* (21 N. Y., 412–419).

In the case of *Prime* v. *Koehler* (77 N. Y., 91) it was held that where the purpose of a promise to pay the debt of a third person is to secure a benefit to the promisor, to relieve his property from a lien, or securing or confirming his possession, the promise is original and not collateral and so is not within the statute of frauds.

The same rule was reaffirmed in the case of *Smart* v. *Smart* (97 N. Y., 559), and in the case of *Ackley* v. *Parmenter* (98 id., 425), in which case it was said that to take the case out of the statute there must be a consideration moving to the promisor either from the creditor or the debtor, and beneficial to him, thus imparting

to the promise the character of an original undertaking. (See, also, *White* v. *Rintoul*, 17 Jones & Spencer, 421.) It consequently appears to us that the rule is well settled that where the promise is made in consideration of benefits to be derived by the promisor by the act of the promissee, the promise is not void under the statute.

In the case under consideration the promise was made by the defendant to induce him to sign the bond. There were certain benefits to be derived by the act of the plaintiff in so signing. By that act the plaintiff became obligated to pay and make good any default of the administrators; he has now been compelled to pay, and it appears to us that he may properly require the defendant to make good his guaranty.

We do not understand that any demand was necessary before bringing the action. The defendant in his answer alleged that $100 of the money appropriated by Dowdall was appropriated with the knowledge and consent of the plaintiff, who indorsed Dowdall's note for that amount, payable to the administrators of the estate for the purpose of having the same placed with the assets as a substitute for the money. Upon the trial the defendant offered to prove this allegation, and the same was excluded under objection by the plaintiff. The amount of the devastavit, as we have seen, was $1,582.35. The plaintiff succeeded in compromising the suit brought for this amount for $1,200; $382.35 less than the amount that Dowdall was in default, as shown by the decree of the surrogate. The amount thus saved by the compromise was more than the $100 alleged to have been misappropriated with the knowledge and consent of the plaintiff. We think we may assume that the $100 was included in the settlement before the surrogate, and embraced in the final compromise made by the plaintiff.

The judgment and order should be affirmed.

SMITH, P. J., BARKER and BRADLEY, JJ., concurred.

So ordered.