ISRAEL D. GOODMAN, Respondent, *v.* JACOB COHEN, Appellant.

In an action to recover the alleged purchase-price of certain goods, plaintiff's evidence was to the effect that his stock of goods, which was insured in four companies, having been damaged by fire, appraisers were appointed, one by plaintiff, and one, the defendant, by the companies; that in order to facilitate the adjustment, defendant agreed to and did purchase, for himself, a portion of the damaged goods, in respect to which the appraisers could not agree, at cost price, he agreeing to pay the purchase-price to the companies in proportion to the amount of their respective policies, the amount to be included in the award as if the goods sold were a total loss. In respect to one of the companies, the financial condition of which was doubtful, defendant agreed that if it became insolvent within sixty days, so as not to pay its policy, he would pay its proportion to plaintiff. *Held*, that the agreement was not one to answer for the debt or default of another, but an agreement to pay the purchase-price of goods sold to himself, either to the company or to plaintiff; the contingency not affecting defendant's liability, which was absolute, but only the method of discharging it; and so that the contract was not within the Statute of Frauds; also, that the contract was not void as against public policy.

(Argued February 4, 1892; decided March 15, 1892.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York, entered upon an order made March 3, 1890, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

This action was brought to recover the sum of $105.26, the alleged purchase-price of certain goods claimed to have been sold by plaintiff to defendant, upon the promise of the latter to pay said amount to the Citizens' Insurance Company of Mobile, provided it should not suspend business or go into liquidation, or become insolvent within sixty days, and if either of those events happened, upon the further promise to pay said sum to the plaintiff.

The complaint alleged the making of said agreement, the delivery of the goods to the defendant thereunder, the insolvency of said insurance company within the period specified, a

demand of payment and a refusal by defendant to pay. The answer was a general denial.

Further facts are stated in the opinion.

*Benno Loewry* for appellant. The agreement alleged to have been made by the defendant was absolutely void under the provisions of the Statute of Frauds, because it was not in writing and subscribed by the defendant. (*Jones* v. *Cooper*, 1 Cowp. 228; *Mallory* v. *Gillett*, 21 N. Y. 412; *Roe* v. *Barker*, 82 id. 431; *Watson* v. *Randall*, 20 Wend. 201; *Burtis* v. *Thompson*, 42 N. Y. 246; *Allen* v. *Scarff*, 1 Hilt. 209; *Dixon* v. *Frazee*, 1 E. D. Smith, 32; *Cahill* v. *Bigelow*, 18 Pick. 369; *Cram* v. *Carville*, 5 Hill, 483; *Brady* v. *Sackrider*, 1 Sandf. 514; Comyn on Cont. [ed. 1835] 236; *Leonard* v. *Vredenburgh*, 8 Johns. 29; Story on Cont. [3d ed.] 953; Smith's Mer. Law, 456; *Van Valkenburgh* v. *L. I. Co.*, 51 N. Y. 465; *Dows* v. *Swett*, 134 Mass. 140.) The defense that this agreement is void under the Statute of Frauds, or for any other reason, is available, and such defense need not be specially pleaded. (*Duffy* v. *O'Donovan*, 46 N. Y. 223; *Cary* v. *W. U. T. Co.*, 15 N. Y. S. R. 204; *Porter* v. *Wormser*, 94 N. Y. 431.) The contract sued upon by the plaintiff is also void for lack of consideration. (*Folhurst* v. *Powers*, 39 N. Y. S. R. 582; *Mallory* v. *Gillett*, 21 N. Y. 412.) The defendant acted as an agent merely for the insurance companies, and this agency being well known to the plaintiff, the defendant cannot be held liable for any act performed or agreement made by him as such agent within the scope of his authority. (*Whitford* v. *Laidler*, 94 N. Y. 145; *Colvin* v. *Holbrook*, 2 id. 126; *Denny* v. *M. Co.*, 2 Den. 115.) The agreement testified to by the plaintiff and his witnesses was void as against public policy. (*Case* v. *Carroll*, 35 N. Y. 385; *Dutton* v. *Wilbur*, 52 id. 312; *R. R. I. & S. L. R. R. Co.* v. *Boody*, 56 id. 456; *Leonard* v. *Poole*, 114 id. 371; *Bell* v. *Leggett*, 7 id. 176; *Knowlton* v. *C. S. Co.*, 57 id. 518; *Arnot* v. *P. C. Co.*, 68 id. 558; *Foley* v. *Speir*, 100 id. 552; *Materne* v.

*Horwitz*, 101 id. 469; *Keen* v. *Kent*, 4 N. Y. S. R. 431; *Goodrich* v. *Houghton*, 29 id. 905.) It is not shown anywhere by the evidence adduced on the part of the plaintiff that the contingencies upon which the defendant is sought to be made liable, to wit, the failure of the Citizens' Insurance Company of Mobile, or its insolvency or suspension of business, have ever occurred; and hence the plaintiff has not proven one of the material allegations of his complaint, and is, therefore, not entitled to a recovery. (*E. Bank* v. *Kaufmann*, 93 N. Y. 273; *Gates* v. *McKee*, 13 id. 232; *People* v. *Chalmers*, 60 id. 158; *Kingsbury* v. *Westfall*, 61 id. 356; *M. C. Works* v. *Schad*, 38 Hun, 71; 1 Greenl. on Ev. §§ 200, 201; *Law* v. *Merrills*, 6 Wend. 268.) The court below erroneously refused to charge that the witnesses Gregg, Gilbert, Hill, Landgraff and Miller were disinterested and unimpeached witnesses. (*Moran* v. *McLarty*, 75 N. Y. 25; Penal Code, § 579.)

*Arthur Furber* for respondent. The contract is an original undertaking on the part of defendant to take and pay for certain goods in a certain manner, and is not within the Statute of Frauds. (*Wales* v. *Stout*, 115 N. Y. 638; *Mallory* v. *Gillett*, 21 id. 412; *Milks* v. *Rich*, 80 id. 269; *Smart* v. *Smart*, 98 id. 539.)

VANN, J. Upon the trial it appeared that in January, 1887, the plaintiff was a dealer in men's underwear at No. 80 East Broadway in the city of New York. His stock of goods was insured to the amount of $4,750 in four insurance companies, including the Citizens' of Mobile, and a loss having happened by a fire that occurred on the third of said month, one Sunshine, selected by the plaintiff, and the defendant, selected by the insurance companies, were duly appointed appraisers to estimate the damages, with power to select a third person as umpire if they could not agree. The appraisers met, but after much effort could not unite in making an award. The defendant had been instructed by the representative of all the

companies to make the appraisal as brief as practicable, to avoid choosing an umpire, if possible, and if there were a few items that the appraisers could not agree upon, to allow them as a total loss and take the goods, which the insurers were authorized by their respective policies to do. Some damaged goods that cost $500 were in fact delivered by the plaintiff to the defendant, who took them away, sold them and turned the proceeds over to the insurance companies, and on the trial he claimed that he did this as agent of the insurers, pursuant to their directions and under the provisions of the policies permitting it. On the other hand the plaintiff claimed that the defendant, in order to facilitate an adjustment of the disputed items of damage, purchased said goods for himself at their cost price, and in his own name and behalf promised to pay $500 for the same to the several insurance companies in proportion to the amount of their respective policies, but as there was some doubt as to the financial condition of the Citizens' Insurance Company of Mobile, that he further promised that if that company should become insolvent, or fail within sixty days, he would pay its proportion, or $105.26 to the plaintiff. The amount so to be paid to the companies was to be included in the award, as if the goods thus sold had been a total loss, and the plaintiff was to get his pay from all except the Citizens' company when the award was paid, and from that company also, unless it failed, in which event the defendant was to pay plaintiff directly for a proportionate part of the goods. Each party supported his theory by the direct and positive testimony of several witnesses, and the defendant's version was to some extent corroborated by documentary evidence. The jury, however, found for the plaintiff and, hence, the contract, even if unusual in form and improbable in fact, must, for the purpose of this appeal, be regarded as established in accordance with his theory. After the sale and delivery of the goods the appraisers made an award, which included said goods as totally lost, and each company, except the Citizens' of Mobile, paid its proportion of the award to the plaintiff.

The defendant claims that the agreement was a special

promise by him to answer for the debt or default of the insurance companies, and that it was void, because not in writing. This depends on who bought the goods. If the insurance companies bought them, the debt thereby created was for them to pay and the promise of the defendant was to answer for their debt; but, as the jury have found, he bought the goods for himself, and hence the debt was his own. The promise was to pay for goods purchased by the defendant, not to pay any part of the damages caused by the fire. The agreement was not made by him in behalf of the companies, but in his own behalf. The companies did not elect to take the goods, but the defendant bought them of the plaintiff, who owned them at the time, and in consideration of the sale he promised to pay the price agreed upon to the appointees of the plaintiff, and so far as the amount in question is concerned, to the plaintiff, himself, in a certain contingency, which subsequently took place. The defendant was not to become liable upon the default of another, but was absolutely liable by the terms of the agreement. There was no original promise by one and a collateral promise by another, but a single promise made by the defendant for a consideration moving directly to himself. He did not agree to pay for the goods if the company did not pay for them, but to pay for them in any event, either to the company or to the plaintiff. The contingency mentioned did not affect his liability, but only the method of discharging it, as he was to pay the same amount whether it happened or not. So far as the purchase of the property is concerned, and that is all that there is here involved, there was only one debt, and that was never binding on the company, but on the defendant alone. We think that the contract, as the jury found it, was not within the Statute of Frauds. (*Mallory* v. *Gillett*, 21 N. Y. 412; *Leonard* v. *Vredenburgh*, 8 Johns. 29; *Rector, etc.*, v. *Teed*, 120 N. Y. 583, 588; *Wales* v. *Stout*, 115 id. 638; *Milks* v. *Rich*, 80 id. 269.)

The claim that there was no evidence that the Citizens' Insurance Company had failed is not well founded, for one of

the witnesses testified to an admission of the defendant that he knew it had failed. There was other testimony on the same subject in favor of the plaintiff's theory, and no effort was made by the defendant to show that said company was solvent.

It is further claimed that the agreement, as testified to by the plaintiff and his witnesses, was void as against public policy, because the defendant had no right, while acting as an appraiser, to buy any part of the subject of the appraisal for himself. No such defense was pleaded in the answer and the question is raised by no exception taken upon the trial, but we are asked to consider it upon the ground that the court should, upon its own motion, refuse to enforce a contract if it is obviously opposed to the policy of the law.

The defendant, while acting as an appraiser, acted as a judge, and if the contract necessarily tended to bias his judgment or affect his impartiality in that capacity, it was doubtless void as against public policy. The contract, however, if performed according to its terms, could have had no such effect. The defendant, in his own behalf and not in behalf of the companies he represented, purchased damaged goods and agreed to pay what they were worth before they were damaged to the companies interested, in proportion to their interest. The purchase-price was included in the award on the same basis as if the goods had been a total loss, but as the companies were to receive the same amount from the defendant, they could lose nothing. On the other hand, the defendant would lose by the transaction, unless he could sell the unsound goods at their value if sound, or persuade, for he could not compel, the companies to reimburse him for the difference. In other words, he took upon himself the burden of loss, so far as the goods in question were damaged. To that extent, by force of the contract now attacked as illegal, the companies were in effect relieved of the obligation of their policies. Certain goods of the plaintiff had been damaged to the amount of $1,134.50, which was agreed upon by the appraisers. Certain other goods worth $500 at cost price had also been damaged, seriously as claimed by the plaintiff, but slightly as claimed by the defend-

ant. The appraisers could not agree upon the amount of damage that these goods had sustained. In order to close the matter up, the defendant agreed to buy them of the plaintiff for $500, and instead of paying that sum directly to him, to pay it to the companies, and include it in the award, making it $1,634.

As stated by one of the witnesses, the defendant said to the plaintiff: " In order to close the damages, I am going to buy personally $500 worth of goods, and in order that it should not appear to be crooked before the companies, I will divide it proportionately, according to the amount of insurance of each company. I will give them my check for it, and they in return will give you their check." In case one of the companies failed, he added : " I will give you my check for it at the expiration of the time." He was to pay the companies for the goods he took, and they were to pay the plaintiff. By no possibility could the defendant make anything out of the matter, and it was only by the voluntary action of the companies that he could be saved from loss. While we deprecate the tendency of any contract, however fair and honest it may be, whereby an arbitrator deals with the *rem adjudicandam*, we see nothing in the contract under consideration that necessarily is so opposed to public policy as to call upon us to interfere without an exception, because if the point had been raised upon the trial, it might have been shown that the purchase was made by the defendant with the knowledge and consent of all the insurance companies.

After examining all the exceptions to which our attention has been directed, we find no error requiring a reversal of the judgment, which should, therefore, be affirmed, with costs.

All concur, except FOLLETT, Ch. J., and LANDON, J., dissenting.

Judgment affirmed.