J. PHILIP WEYER AND MARY WALZER, RESPONDENTS
v. WILLIAM BEACH, IMPLEADED. ETC., APPELLANT.

*Mechanic's lien — action to foreclose by sub-contractor — A personal judgment based on agreement of owner to pay contractors debts cannot be recovered in — Statute of frauds.*

The defendant Beach entered into a contract with S. & B. by which the latter agreed to erect a house for the former; the contract reserving the right to Beach to retain moneys due to the contractors to pay for materials used by them. The plaintiffs entered into a contract with S. & B. to furnish brick, and delivered a portion of the brick thereunder. One of the plaintiffs testified that subsequently, doubting the solvency of the contractors he called upon defendant who agreed that if he (plaintiff) would keep him posted as to the amount due from S. & B. he (defendant) would keep back money enough to pay him ; that he would " see him through." In this action brought to foreclose a mechanic's lien, the referee found that at the time of the filing of the lien nothing was due to S. & B., and nothing had been paid to them by the defendant with intent to avoid the lien law ; and gave a personal judgment against the owner upon his alleged agreement with the plaintiffs.

*Held,* that as it appeared from the facts found by the referee that the plaintiffs acquired no lien upon the property by filing their notices of claim, they could not in an action to foreclose their alleged lien recover a personal judgment against the owner upon a separate and independent contract.

That in any event the alleged contract made by defendant and the plaintiff being a parol one, to answer for the debt of another, was void by the statute of frauds.

APPEAL from a judgment in favor of the plaintiff entered upon the report of a referee. The action was brought under the General lien law of this State, to enforce a lien claimed by the plaintiffs to have been perfected by them against the property of the defendant Beach. Stone and Bassett had agreed to erect a build-

ing for Beach, and plaintiffs had furnished brick to the said contractors, for which they had not been paid. The notice by which the action was commenced alleged, among other things :

"That, before the delivery of the said brick, it was agreed by and between the said William Beach and the said Weyer & Walzer that, in case the said Weyer & Walzer should sell and deliver to the said Stone & Bassett the said brick for the said building, and notify him (the said Beach) of any amount the said Stone & Bassett should fail to pay to said Weyer & Walzer, when it might occur that said Stone & Bassett failed thus to pay, he (the said Beach) would retain in his hands enough of the moneys which might be owing from him to said Stone & Bassett, and apply and devote the same to the payment of such amount; and, upon the failure of said Stone & Bassett to pay the sum aforesaid, they (the said Weyer & Walzer) notified said Beach of said failure.

That, as they are informed and believe, there was then, at the time of his being so notified, enough in his hands to pay said sum, owing by said Beach to said Stone & Bassett upon the contract for the erection of said building, but he (said Beach) has neglected to pay said sum to said Weyer & Walzer, though requested so to do."

The referee held that the lien of the plaintiffs was invalid and ineffectual under the facts shown, but decided that the plaintiffs, upon their case as alleged and proved, were entitled to a personal judgment against Beach, which the report directed, and from the judgment accordingly entered the defendant Beach has brought this appeal.

The plaintiffs have also appealed from that part of the judgment which decides that their lien is invalid and ineffectual.

*David B. Hill*, for the appellant.

*Hart & McGuire*, for the respondents.

BOCKES, J. :

It was proved and found by the referee that there was nothing due from Beach, the owner, to the contractors Stone & Bassett, on the building contract between those parties, when the plaintiffs filed their notice of lien; and nothing accrued to the contractors

thereafter from the owner; nor is there any sufficient evidence to sustain the plaintiffs' claim that Beach, the owner, paid "any money or other valuable thing on such contract by collusion for the purpose of avoiding or with intent to avoid the provisions" of the lien law. (3 R. S. 791, § 3, 6th ed.) The conclusion of the referee, therefore, that the plaintiffs acquired no lien upon the property of Beach, the owner, by the filing of their notice of lien was entirely correct. It should be here remarked that the lien was not sought to be established on the ground that the plaintiffs had furnished materials (brick) directly to Beach, the owner; for the notice by which the action or proceeding was commenced, and which takes the place of a complaint in pleading, states that the plaintiffs furnished the brick to Stone & Bassett, the contractors, at their request. It follows that the plaintiffs' appeal in this case has no support either in law or fact. And it is difficult to see why the findings of the referee, to wit: That there was nothing due from Beach, the owner, on the building contract; and that he had paid nothing thereon collusively or in fraud of the lien law, did not end all rights which the plaintiffs, who claimed for materials furnished Stone & Bassett, could enforce as against Beach, the owner, under the statutory proceeding taken by them. (*Crane* v. *Genin*, 60 N. Y., 127; *Cheney* v. *The Troy H. Association*, 65 N. Y., 282; *Thompson* v. *Yates*, 28 How. 142.) The proceeding to foreclose a lien under the provisions of the law known as the mechanic's lien law, is purely statutory. It has no foundation in the common law. So it has been well said that it can be used for no other purpose than such as the statute contemplates. It would be inharmonious as well as unauthorized to join a claim on a promissory note, or other independent right of action, with a claim enforceable under the provisions of this law.

GROVER, J., says in *Dowdney* v. *McCullom* (59 N. Y., 367), "The proceeding is entirely statutory, and the court can exercise no power except such as is conferred by the statute. That confers power only to determine the amount due the lienors, the priority of their respective liens, to order the sale of the property subject to the liens, and distribute the proceeds according to the rights of the parties, and to give a personal judgment in the proper

case against the parties liable to pay the amount found due, and issue execution against such parties for its collection." Unquestionably. a personal judgment may be rendered in some cases in proceedings under this law. The statute so provides, so it was held in *Glacius* v. *Black* (67 N. Y., 563), and a personal judgment was held proper in favor of the contractor against the owner when the lien had been lost by lapse of time. In this case the lien existed when the proceeding was instituted, and the judgment was awarded on the contract on which the lien was predicated. But can a personal judgment be rendered in these proceedings against the owner, as was done in this case where the proceedings were taken by a material man for materials furnished to the contractor, and there was nothing due from the owner to the contractor, and where nothing had been paid by the owner in fraud of the law ? The law manifestly contemplates the rendering of a personal judgment against the owner when necessary to protect the claimant in his rights as regards his lien; as for instance where the owner has made payments in fraud of the law to the injury of the claimants; also for costs of the action where costs are awarded against him; also against any party to the action or proceeding where necessary in any way to secure, determine or adjust the lien or liens if there be several (§ 15). This presupposes a lien to exist or to have existed at some time within the purview of the lien law. Now in the case in hand the judgment against Beach was awarded on a claim wholly disconnected with any right of action given by the lien law. The recovery was based on a purely common law right, simply on contract, entirely personal in character. As the referee found, the right of recovery under the provisions of the lien law as set forth in the complaint (notice) wholly failed. It never. had any foundation in law; every fact essential to jurisdiction under the lien law remained unproved; and the case was left to stand simply on the promise of Beach to pay for property which the plaintiffs agreed to deliver, and which as they assert, they did deliver on the faith of his promise. The case resolved itself into an action for property sold and delivered; or it was decided by the referee on that theory. The recovery was not for any balance due and unpaid from Beach to the contractors, intercepted by a proceeding under the lien law; nor for money paid in fraud of

the law; nor did the plaintiffs recover on the theory that they had furnished materials directly to the owner and thus, according to the provisions of that law, had acquired a right of lien on the building or premises therefor, as material men. But the recovery, under the rulings of the referee, was on a claim as distinct in character from one enforceable under the provisions of the lien law, as if it had been a promissory note given by Beach to the claimant for borrowed money. We are of the opinion that the personal judgment rendered against Beach under the facts of this case was improperly granted.

But if in error in this conclusion, and if it be admitted that a personal judgment against Beach might be rendered in this case, as in a common law action, the question remains whether the promise proved was not within the statute of frauds and void.

It appears that Beach, the owner, entered into a written agreement with the contractors, Stone & Bassett, by which the latter agreed to erect a building for the former on his premises, the contractor to furnish the material therefor. There was a clause in the agreement which permitted Beach to retain moneys due thereon to Stone & Bassett for the purpose of paying for material used by them, and he was authorized to make such payments and have them applied as payments on the contract. Stone & Bassett then contracted with the plaintiffs for the brick necessary to erect the building at a stipulated price per thousand. After the plaintiffs had made delivery to Stone & Bassett of a small portion of the brick they became distrustful of the latter's responsibility and thereupon, on meeting Beach, they enquired if he would retain moneys on his contract with Stone & Bassett for the building of the house, sufficient to pay for such brick as they should deliver to S. & B. and pay them therefor, in case they would keep him informed from time to time of the amount remaining unpaid. According to the testimony of one of the plaintiffs Beach replied that he would do so, this however Beach flatly denied. Now, in the first place, it becomes important to see precisely what the arrangement was between the parties, if any was in fact made; and in determining this fact we are not concluded by the decision of the referee, though there was a conflict of evidence, but it becomes our duty on the appeal to examine the case *de novo* on

the proof submitted. Such seems now to be the rule laid down by the Court of Appeals. (*Godfrey* v. *Moser*, 66 N. Y., 250.) We must therefore examine the evidence and determine the nature and extent of the alleged contract between the parties for ourselves.

The plaintiff Weyer, alone testified to the arrangement on the part of the plaintiffs. He gave the conversation between himself and the defendant, Beach, as follows: "I asked him if I should keep him posted as to what they (S. & B.) owed me, whether he would keep money enough back out of his contract to pay me. Mr. Beach said he would. I said I would commence drawing, and he said all right." This occurred after some of the brick had been delivered. On his cross-examination, the witness gave the conversation as follows: "I asked him if he would retain money if I would keep him posted, and he said he would *see me through.* I think that was it; and I replied, then I can commence delivering brick, and he said all right; this was all there was said. * * I am sure that the remark of Beach was, "I will see you through." The witness also testified to various facts, showing that the plaintiffs made the delivery to Stone and Bassett on their contract. He (Weyer) called on them for payment, and obtained payment of part from or through them; and on one occasion he told Beach that he "would not have drawn the brick if he (Beach) had not *agreed to be security.*" Besides in the notice which stands as a pleading, the plaintiffs state that the brick were furnished to Stone and Bassett. Thus it is made entirely certain that there was no surrender or abandonment of the first contract for the brick, made between the plaintiffs and Stone and Bassett. This contract was not terminated or superseded by the alleged agreement between the plaintiffs and Beach. It continued in force, and the brick was delivered under that contract. It must follow then that the alleged arrangement between the plaintiffs and Beach was collateral to it, and was in the nature of a guaranty of its performance by Stone and Bassett as to payment. And so the plaintiff, Weyer, who made the arrangement understood it. He testified that he told Beach that he would not have drawn the brick if he (Beach) had not agreed to be "*security.*" Such is the plain import of his evidence. He says, "I asked him if I should keep

him posted as to what they *owed me* "—(that is, as to the amount Stone and Bassett should become indebted on the brick contract from time to time) " whether he would keep money enough back out of his contract to pay me;" and when afterwards he called the defendant's attention to the conversation, he said he should not have drawn the brick had he (Beach) not agreed to be " security." It is very manifest that the plaintiff, Weyer, understood the arrangement as one of security on the part of Beach; that is, that he (Beach) would be responsible for whatever amount Stone and Bassett should fail or omit to pay. Therefore, accepting the arrangement or promise to be as proved by the plaintiffs, it was a promise to answer for the debt or default of Stone and Bassett, hence having been oral merely, it was void by the statute of frauds. The statute declares that every special promise to answer for the debt, default or miscarriage of another person shall be void, unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith. (3 R S., 142, § 2, sub. 2, 6th ed.) It is said in *Brown* v. *Weber* (38 N. Y., 187), that the language employed in the statute shows that the test to be applied to every case is, whether the party sought to be charged is the principal debtor, primarily liable; or whether he is only liable in case of the default of a third person. In *Cowdin* v. *Gottgetreu* (55 N. Y., 650), it is laid down, that while a person may become liable upon a parol promise for goods purchased which are delivered to and are intended for the use of another, in order to make him so, the debt must be his only; he must be exclusively liable therefor. In *Duffy* v. *Wunsch* (42 N. Y., 243), A promised to pay the debt of B, if C would discontinue a suit for its recovery, then pending against B. The promise was held to be within the statute of frauds, and void. LOTT, J., in this case, remarked, that the promise was not made or accepted in the place or as a substitute of the original debt, or in its extinguishment; on the contrary, B continued liable for the amount or balance thereof which the defendant agreed to pay. So here the promise by Beach, as testified to by the witness, was not made or accepted in place of, or as a substitute for the original contract between the plaintiffs and Stone and Bassett, or in extinguishment thereof; on the contrary, Stone and Bassett continued liable for

the amount or balance which Beach agreed to pay. (See, also, *Mallory* v. *Gillett*, 21 N. Y., 412; *Loonie* v. *Hogan*, 9 N. Y.,435; *Larson* v. *Wyman*, 14 Wend., 246; *Payne* v. *Baldwin*, 14 Barb., 570.)

No new terms of payment or conditions of delivery were agreed upon, or even considered, between the plaintiffs and defendant. The contract with Stone & Bassett determined all that, and it was to continue in force. Delivery of the brick and payment therefor was to be made according to its terms, and the promise of the defendant, according to the proof, was this, in legal effect: That he would answer to the plaintiffs for the default of Stone & Bassett in making payment as they had agreed. Not having been made in writing, it was void by the statute of frauds. Nor does the clause in the agreement between Stone & Bassett and Beach, by which the latter was at liberty to retain money which should become due the former thereon, and apply it in payment for materials used by them in erecting the building, aid the plaintiffs' case. This was merely permissive as to Beach, not obligatory on him; and this clause in no way validated his otherwise invalid promise. The judgment against Beach must be reversed on his appeal with costs to abide the event. But one bill of costs on the appeal to be allowed.

LEARNED, P. J., and OSBORN, J., concurred.

Judgment against Beach reversed on his appeal, costs of appeal to abide event; reference discharged; new trial granted as to Beach.