ANDREW J. BELKNAP, Appellant, *v.* WENDELL M. BENDER, Respondent.

Defendant, being a creditor of the firm of W. & McV. who were engaged in running a saw-mill, entered into an agreement with that firm by which he agreed, in substance, to take their mill, saw up the logs, market the lumber, and apply the net proceeds to the payment of his own and other debts, among them a debt due from said firm to plaintiff for work. In an action to recover the amount of said debt, plaintiff's evidence was to the effect that defendant told him to keep on working at the mill and he would pay him at the same rate W. & McV. had been paying; that he had bought the stock and had agreed to pay him (plaintiff) what was due him, and if he would keep on working for him (defendant) he would pay him for his work, and in a day or two would pay $1,000 upon the amount due; that plaintiff went on and worked for defendant, but the latter had failed to pay the indebtedness of W. & McV. At the time of the commencement of the action defendant had disposed of about half of the lumber. *Held,* that plaintiff was not entitled to recover; that the promise to work at what appeared to be a full compensation furnished no consideration for the promise to pay the debt of W. & McV., and that said promise was void under the statute of frauds.

The judge charged that if the jury were satisfied that defendant agreed to pay the $1,000, as testified to by plaintiff, he could recover upon the theory that the property having been put in defendant's hands for sale to pay the debts specified, he would be liable to pay plaintiff after he had disposed of it, and hence could waive delay and be bound by his promise to pay before he had realized the proceeds. *Held,* error; that there was no consideration to uphold such a promise, which, if valid, imposed an entire new obligation, as it bound defendant to pay, whether he realized sufficient from the sale or not.

*It seems,* that even if the promise had been made after defendant had converted the proceeds of the property, it could have been enforced against him only to the extent of the share of such proceeds applicable to plaintiff's debt.

*Lawrence* v. *Fox* (20 N. Y., 268) ; *Mallory* v. *Gillett* (21 id., 412) ; *Fullam* v. *Adams* (37 Vt., 391) ; *Young* v. *French* (35 Wis., 111), distinguished.

(Argued November 27, 1878; decided December 10, 1878 )

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover the amount of an

indebtedness of the firm of Ward & McVicker to plaintiff, upon the ground of an alleged promise on the part of defendant to pay the same.

The facts appear sufficiently in the opinion.

*A. Coburn*, for appellant. The promise proved and found by the jury is not within the statute of frauds. (2 N. Y. Stat. at Large, 140, § 2, sub. 2; *Leonard* v. *Vredenburgh*, 8 J. R., 29; *Farley* v. *Cleveland*, 4 Cow., 432; Throop on Verb. Conts., 528; also, §§ 64, 81, 533, 540; *Mallory* v. *Gillette*, 21 N. Y..[4 Smith], 412, 433 [3], 437 [2]; *Brown* v. *Weber*, 38 id. [11 Tiff.], 187, 189, 190; *Sanders* v. *Gillespie*, 59 id. [14 Sick.], 250, 251–252; *Booth* v. *Eighmire*, 60 id. [15 id.], 238, 240; *Tallman* v. *Bressler*, 65 Barb., 369, 378–379; *Fullman* v. *Adams*, 37 Verm., 391; *Maule* v. *Bucknell*, 50 Penn., 39; *Robinson* v. *Gillman*, 43 N. Hamp., 485; Fell on Guaranty, 1, 12, 13, and note [1]; *Lawrence* v. *Fox*, 20 N. Y., 268.) The express promise to pay $1,000 at once was in law a waiver, both as to the time of payment and the extent of defendant's liability. (*Williams* v. *Potter*, 2 Barb., 316; *Buel* v. *Trustees, etc.*, 3 Comst., 197; *Root* v. *Wagner*, 30 N. Y., 9; *Miller* v. *Hackley*, 5 J. R., 375; *Betts* v. *Perine*, 14 Wend., 219; *Boehen* v. *Ins. Co.*, 35 N. Y. [8 Tiff.], 131; Throop on Verb. Conts., §§ 567, 568, 569, 570.)

*C. D. Adams*, for respondent. Plaintiff cannot recover under the contract with Ward & McVicker, because the trust was not closed when sued. (6 T. & C., 611; 21 N. Y., 412; 37 id., 164; 42 id., 247; 4 Bosw., 149.)

EARL, J. In 1872, the plaintiff was engaged with his men and teams in managing a saw-mill for the firm of Ward & McVicker, and they were indebted to him, for labor performed, in the sum of $1,500, and were also largely indebted to the defendant and other parties. The defendant then for the purpose of securing his debt entered into the following agreement with the firm :

" Agreement made 20th August, 1872.

" W. M. Bender hereby agrees with Ward & McVicker to take their mill, called Shedd's mill, to run the said mill, and to saw up their logs now lying in their log yard, to ship the lumber and to sell the same, and to apply the proceeds thereof to the payment of the current expenses of sawing and shipping said lumber, and also to the payment of the judgment claims, amounting to $4,872.29, and the claim of said Bender, say $7,000, and the rent of mill, $1,000, now due, and the back wages of their hands, say $1,500, as stated in schedule annexed, and the balance, if any, to pay over to said Ward & McVicker, for the consideration of ten per cent on the amount of said sales ; and the said Bender agrees, in case of any sale of said logs or lease of said mill, under any judgment, to buy the same and to hold them in order to carry out the true intent of this agreement, it being under-stood that said Bender is only to pay said several claims as mentioned above from the proceeds of said lumber as afore-said.

" BENDER, SON & CO.

" WARD & McVICKER."

To this agreement was annexed a schedule of the debts to be paid under the agreement among which was the debt due the plaintiff.

In pursuance of this agreement the defendant took possession of the mill, and the stock of logs and lumber on hand, and at the time of the commencement of this action had disposed of about half of the lumber.

This action is brought by plaintiff, not for an accounting under the agreement and to recover his share of the proceeds of the lumber, but to recover the whole sum due him from Ward & McVicker, upon the theory that defendant had absolutely promised to pay it to him.

Upon the trial the plaintiff testified that the defendant came to him and told him to keep on working at the mill, and he would pay him for his work at the same rate which

Ward & McVicker had been paying him, and that he had bought the stock of Ward & McVicker, and had made an arrangement with them to pay him what was due him from them, and if he would keep on working for him he would pay him for his work, and in a day or two would pay him $1,000 upon the amount due him from Ward & McVicker; and he testified that he went on and worked for the defendant, but that the defendant had failed to pay him the amount due him from Ward & McVicker. The plaintiff recovered $1,000 and interest.

The promise of the plaintiff to work for the defendant at what appeared to be a full compensation did not furnish a consideration for defendant's promise to pay Ward & McVicker's debt. (*Pfeiffer* v. *Adler*, 37 N. Y., 164.) And the trial judge so held. But from plaintiff's evidence standing alone, it might have been inferred that defendant had purchased the saw-mill stock of Ward & McVicker, and had agreed with them to pay a portion of the purchase price to him in satisfaction of the debt due him from them, and in that case under the rule laid down in *Lawrence* v. *Fox* (20 N. Y., 268), and other similar cases, the plaintiff could have recovered. But at a later stage of the case, the written agreement between defendant and Ward & McVicker was proved, and that shows precisely what defendant agreed with them to do. Under that agreement, he did not become personally liable to pay the plaintiff; he did not agree to pay plaintiff absolutely, or with his own funds. He did not purchase the stock. He simply agreed to saw the logs, and market the lumber, and apply the net proceeds in payment of the debts specified. He incurred no personal liability for the debts, and was required only to be faithful in the discharge of the trust assumed.

The defendant could not become bound to pay to the plaintiff the debt due him from Ward & McVicker by any verbal promise made to him. Such a promise to be binding within the statute of frauds must be in writing, and founded upon a sufficient consideration passing between the parties.

But if Bender had purchased lumber of Ward & McVicker, and thus become indebted to them, and in consideration thereof had agreed to pay a portion of his debt to the plaintiff in satisfaction of the amount due him from Ward & McVicker, such a promise, as stated above, would not have been within the statue of frauds. But the difficulty here is that there was no such debt to Ward & McVicker, and no such promise by the defendant. But the trial judge held that if the jury were satisfied that the defendant agreed to pay the $1,000, as testified to by plaintiff, the plaintiff could recover upon the theory that the property had been placed in the hands of the defendant for sale, and that he would be liable to pay the plaintiff after he had disposed of it, and hence that he could waive the delay and be bound by his promise to pay before he had realized the proceeds. And it is upon this theory in part that the plaintiff now seeks to uphold the recovery at the circuit.

The case then stands thus. The defendant by his agreement with Ward & McVicker was not personally bound to pay this debt. He was bound only to pay it out of the proceeds of the property when realized. The property was placed in his hands upon the consideration expressed in the paper, and he had it at the time of the alleged promise to the plaintiff. What consideration is there to uphold the promise? Clearly none. That promise, if valid, imposed upon him an entirely new obligation; it bound him to pay the $1,000 personally, whether he realized sufficient to pay it from the sale of the lumber or not. It created a personal liability when none existed before. Such a promise to be valid, aside from the statute of frauds, must be based upon a consideration. The plaintiff furnished none, and the lumber which had been before placed in defendant's hands upon a different consideration, furnished none. After this promise the defendant's interest in the lumber, and control thereof, were no greater than before.

But the counsel for the plaintiff strenuously contends that the promise of the defendant is without the statute of frauds,

and founded upon a sufficient consideration, simply because Ward & McVicker placed in defendant's hands property upon trust to pay this debt; and there are some general expressions in reported cases which literally taken support this construction.

In *Mallory* v. *Gillett*, (21 N. Y., 412), Judge COMSTOCK says that when the debtor puts a fund into the hands of the promisor, either by absolute transfer or upon a trust to pay the debt, the promise to pay it is not within the statute of frauds. This general language needs some limitation or explanation. If the promise in such case be made to the debtor in consideration of the transfer, it is no doubt valid. If it be made to the creditor after it has become the duty of the promisor under his arrangement with the debtor to pay, then it is valid: as if in this case, Bender had converted the property into money, and then promised the plaintiff to pay the debt, he could have been sued directly on such promise. That would have been an original promise to discharge his own obligation to the plaintiff. As said by Judge COMSTOCK in that case: "The law would imply an obligation on the defendant's part to pay over the money to the plaintiff after selling the goods: and when the law will imply a debt or duty against any man, his express promise to pay the same debt, or perform the same duty, must in its nature be original." POLAND, C. J., in *Fullam* v. *Adams*, (37 Vt., 391), after laying down the rule in substantially the same language as that used by Judge COMSTOCK, says the true principle why the promise to the creditor in such a case is valid is that, "the party making the promise holds the funds of the debtor for the purpose of paying his debt, and as between him and the debtor, it is his *duty* to pay the debt, so that when he promises the creditor to pay it, in subtance he promises to pay his own debt, and not that of another." Throop, in his work on Verbal Agreements, (vol. 1, p. 535), lays down the rule as follows: "When the promisor absolutely controls the fund, but his application thereof to the payment of the debt due to the promisee will acquit him of

a. *duty* which he owed to the person who furnished it, the promise is not within the statute." Here the defendant owed Ward & McVicker no duty to pay the debt. The only duty he owed them was to convert the property and apply the proceeds upon the debts specified. When this action was commenced he was not in any default in the discharge of that duty, and the action was not brought upon such a theory.

To test this case further. Suppose a voluntary assignee of an insolvent debtor after he had taken possession of the property assigned, but before he has converted it into money, and before the duty to pay has arisen, promises without any further or new consideration to pay the debt of one of the preferred creditors, could such a promise be enforced ? Suppose one takes a conveyance of real estate from a debtor upon the agreement with him that he will rent it, and accumulate the rent for ten years, and then pay the net amount to his creditors, and the next day without any new consideration he promises at once to pay the creditors, could such a promise be enforced ? These cases are analogous to the one in hand, and no authority, certainly no case, and that would be regarded as authority in this State, can be found which would authorize the enforcement of such promises. They would be void at common law as without any consideration, and void also under the statute of frauds as not in writing.

But we can go one step farther in this case. Even if the promise had been made after the defendant had converted the proceeds, it could have been enforced against him only to the extent of the proceeds applicable to this debt. (*Ardern* v. *Rowney*, 5 Esp., 254.) If the amount appliable to this debt had been less than the $1,000, then for the excess of the debt the promise would have been without consideration. Defendant in such a case would have owed the duty to pay the plaintiff his share of the proceeds, and his promise to that extent would have been valid as one to discharge his own obligation. But his promise for more, would, as to the excess, not have been to pay anything for which he was lia-

ble in any way, but to pay the debt of Ward & McVicker, and hence within the statute of frauds. Here the complaint was not framed, and the trial was not conducted for a recovery upon such a theory. There was no proof that the property was sufficient to pay the $1,000, but on the contrary the proof showed that it was not sufficient.

The plaintiff's counsel upon the argument claimed that the case of *Young* v. *French* (35 Wis., 111), was very much in point in his favor. But in that case there was a new consideration for the promise sued on, moving from the plaintiff to the defendant, and hence that case is unlike this.

It is difficult to perceive how the doctrine of waiver can apply in a case like this. A person may waive some act or condition which another is to perform to or for him. He may choose to pay a debt before due ; but in a legal sense he waives nothing by so doing. Here, however, there was no debt of the defendant, and he could not by such a waiver, if we call it such, based upon no consideration, impose upon himself an entirely new obligation.

It follows therefore that the order of the General Term must be affirmed, and judgment absolute rendered against the plaintiff, with costs.

All concur.

Order affirmed and judgment accordingly.