By the Court.—Horace Russell, J.—[After stating the facts as above.]
I am of opinion that this judgment cannot be sustained.
While the complaint might have been good on demurrer, it is somewhat indefinite and uncertain, and the proof fails to sustain it in the following particulars (1) The complaint substantially alleges that the defendants so “participated” in the business conducted by Bruff under the declaration of trust, as to be liable as partners. They did not participate. They had no share in the profits. They were simply cestuis que *513 trust, with no actual participation in the conduct of the business, and with no right, or claim of right, except to have their loans, with interest, paid out of the proceeds of the business. (2) The declaration of trust by Bruff did not agree to pay the debts of the Douglass Manufacturing Company as alleged, but only the expenses of the trust business and the specific debts of the defendants. (3) Bruff wasno.t “compelled” (as alleged) certainly not by any duress to transfer to the defendants the assets of the Douglass Manufacturing Company in his hands as trustee, but made such transfer in consequence of negotiations, when it became apparent that he could not pay from the funds in his hands the note to the defendant Flint then due, or pay to the Russell and Erwin Manufacturing Company the moneys which, without their authority, he had advanced to the Douglass Manufacturing Company. (4) The complaint alleges that the defendants gave no consideration for the transfer to them. The indebtedness of the trust to them was the expressed, and a sufficient consideration. (5) The assets did not exceed the just claims of the defendants (as alleged), but were less. It must be remembered that there were prior mortgages upon the property.
I. The theory of the plaintiffs, as indicated by their complaint, and the argument of counsel on the appeal, was that they could sustain their cause of action on either of two grounds ; the first being that the defendants were so far partners and Bruff so far their agent in. the making of the-note sued upon, that they could be held upon it directly. The judge at the trial refused to permit that theory to go to the jury. They were not partners. In no aspect of the law of partnership could they be regarded as partners. Their only relation to the business of the Douglass Manufacturing Company was as cestuis que trust for loans and advances.(Cox v. Hickman, 8 H. of L. Cases, 301).
*514 The second theory, and that on which counsel seem chiefly to rely, was that inasmuch as the defendants had received from Bruff, the trustee, the assets in his hands as trustee, they were bound to pay the debts of the Douglass Manufacturing Company. In support of this theory was quoted the proposition : “ It is a universal rule that if a man purchases property of a trustee with notice of the trust, he shall be charged with the same trust in respect to the property as • the trustee from whom he purchased ’ ’ (Perry on Trusts, § 217). “And even if he pays a valuable consideration with notice of the equitable rights of a third person, he shall hold the property subject to the equitable interests of such person (Id. 828). “If the trustees convey the estate by a breach of trust, the cestui que trusts may follow the estate into the hands of a volunteer, whether he had notice of the trust or not, and into the hands of a purchaser for value if he have notice of the trust. The purchaser under such circumstances becomes a trustee and liable in the same manner as the person from whom he purchased, for knowing another’s right to the property, he throws away his money.” Many cases were cited in support of these propositions, which must be regarded as fundamental in the law of equity. Undoubtedly any person who purchased from the trustee in this case the property of the trust, with a knowledge of the trust, would have taken it subject to the trusts. But what application can these doctrines have to a case where the trustee with the consent of the creator of the trust and owner whatever equitable interest there was after the trust, .conveys to the cestui que trust themselves % All the parties to the trust instrument are parties to this transaction and bound by it. It cannot, therefore, be regarded as a wrongful disposition of the trust property by the trustee. There is nothing in the doctrines above quoted which would hold the purchaser of a trust es *515 tate from a trustee, responsible for the general debts of the creator of the trust, unless the holders of such debts were included among the cestuis que trust. The general creditors of the Douglass Manufacturing Company were not included in Brufl’s declaration of trust, so that we may go to the full length of the proposition of law quoted, without their having any claim either in law or in equity against even a general grantee of the trustee. These defendants stand in a much better position, as I have indicated, than an ordinary grantee, by reason of their having been the only cestuis que trust named in the deed of trust. The persons who might pursue the trust property in the hands of grantees are themselves the grantees. The transactions proved, therefore, aside from the alleged express promise, imposed upon the defendants no legal obligation to pay the note in question or any other of the outside indebtedness of Thomas Douglass. They had advanced money and property to Douglass for which they were secured by the trust deed. The conditions on which the trust was to terminate had happened. Bruff had not the money to make the stipulated payments to them. The property must either be sacrificed at an auction or enforced private sale, or conveyed in the way it was. There can be little doubt that it was inadequate to pay the prior liens and the debts due these defendants. The defendants, therefore, had a right, Thomas Douglass consenting, to receive from Brufi! a conveyance of the property in consideration of their loans and advances. It would be a strange theory of law which could make the defendants, by reason of taking such a conveyance in payment of their own prior liens, responsible for all the floating debts of Thomas Douglass, however incurred, or even those incurred by him in connection with this particular business. The only trust with which, according to the strictest of the authorities, the defendants took *516 that property, was the obligation to pay the expenses incurred by Bruff as trustee. It was Bruff’s first duty to pay the expenses out of the property coming into his hands. Whether or not he did so, we have no proof in this case. There is, however, proof .that the money received from the plaintiffs was not devoted to the payment of expenses, but, so far as it is traced, was devoted to the payment of a prior indebtedness— to wit: one of the notes held by Flint. Therefore, in no sense, can it be claimed that the debt due the plaintiffs constituted them cestuis que trust of the trust estate, so that they have a right to claim that the defendants held the property constructively as trustees for their benefit. And if they had such a right, they could not assert it in a common law action like this, but must go into a court of equity in an action for an accounting under the trust. It may be that as general creditors they would have a right to set aside a transfer to the defendants by proving it fraudulent as against creditors, but even proof that the transfer was fraudulent against creditors, would not give them a common law action on the case to recover the amount of their debt from the grantees.
It was urged on the argument that the note sued upon, being signed in the form ordinarily used in issuing commercial paper for the purpose of the business of the Douglass • Manufacturing Company, constituted a claim against the business done by that company under the trust. The commercial character of the paper can be relied on only as against the parties to it. Bruff signed the note'as treasurer of the Douglass Manufacturing Company. He was not in fact the treasurer of any such company, and it cannot be pretended that either of the defendants gave him authority to sign, this paper as such treasurer, or in any other way. He was not their agent in making that paper. Thomas Douglass, who participated in the transaction, whether *517 called ‘‘Thomas Douglass” or the “Douglass Manufacturing Company,” would undoubtedly be bound by Bruff’s signature, not because Bruff, by reason of the trust, had any power to make such paper, but because Thomas Douglass, from his relation to the transaction, would be estopped from denying that Bruff was his agent in making the paper. That estoppel does not extend to the defendants. Bruff’s position as trustee certainly gave him no express authority to make paper or borrow money. If he had such authority, it must be implied from the nature of the business. His duty was confined to the application of moneys which came into his hands from the sale of goods, to the payment, first, of the expenses of the business, and then to the payment to the indebtedness to Flint, and then to the payment of the indebtedness to the Russell & Erwin Manufacturing Company. The making of notes at all by Bruff, and clearly the making of notes on which to borrow money to pay Douglass’s debts, was entirely outside of any authority conferred upon him by the trust. It cannot justly be claimed that by reason of anything which these defendants did, the plaintiffs took the note in question, and thereby these defendants became bound to pay it; and so that class of cases cited by the plaintiff’s counsel on the argument (The Exchange Bank v. Monteith, 17 Barb. 171; North River Bank v. Aymar, 3 Hill, 262 ; Engh v. Greenebaum, 2 Hun, 136 ; Bank of New York v. Bank of Ohio, 29 N. Y. 619 ; Case v. Mechanics’ Banking Association, 4 N. Y. 166), in all of which a principal sought to escape liability upon his notes in the hands of innocent holders, because an agent, either authorized to make notes for the principal, or supplied with notes made by the principal himself,-had either made more notes than he, the agent, was authorized to make, or had misapplied funds to his own use—do not apply to a case like this under consideration. They all pro *518 ceedecl upon, the theory that where one of two innocent persons must suffer, it should be that one who placed it in the power of some third person to do the wrong which caused the injury. Neither Flint nor the Russell & Erwin Manufacturing Company put it in the power of Bruff to issue notes of the Douglass Manufacturing Company, as treasurer or as trustee, or in any other way, and therefore the principle which runs through all the cases "cited above, has no application to them. It might be applicable as against Thomas Douglass. The right of the plaintiffs to recover as against these defendants, depends, then, not on the commercial character of the paper on which they made their loan, but on the application of the moneys received by Douglass and by Bruff. So far as those moneys are traced at all, they went, not to pay the expenses of the business of the Douglass Manufacturing Company, under the trust, but to pay a part of an antecedent debt, to wit: the note to Flint. The debts of the Douglass Manufacturing Company are by no means necessarily the debts of the trust estate. The trust did not authorize Bruff to make debts. And when Bruff issued notes as an agent, the plaintiffs were bound to make inquiry as to the extent of his authority (North River Bank v. Aymar, supra). It will be observed that the note here sued on, is not signed by Richard P.’ Bruff, trustee, but by Richard P. Bruff as treasurer. So far, then, as appears from the face of the paper, it would seem that in making it Bruff was not acting as trustee, but in some other capacity, with some other authority, and under a title either assumed by himself or conferred upon him by Thomas Douglass. This case differs very essentially from that of Gautier against these same defendants, to which we are cited iñ the 13 Hun, 514. Gautier had furnished to the trustee steel which was manufactured into augers, &c., and sold for the benefit of the trust estate. Without expressing concurrence with what *519 seems to have been assumed by the learned judge who wrote the opinion in that case—that the debt of the plaintiffs was one which could be included under the head of “expenses of the business,” and therefore one subject to which the defendants received the conveyance of the trust property—the distinction between that transaction and this—where the plaintiffs made a loan of money which went, according to the evidence, to Thomas Douglass, was deposited in his own bank, and a portion of which (at least) he used, not in the expenses of the trust business but to pay his debt—is quite obvious.
2. Now comes the question whether this judgment can be sustained on the ground that the defendants expressly promised to pay the debt of the plaintiffs or the debts of the class to which it belonged. The objections to that are:
First. The plaintiffs in their complaint do not count on any express promise. The old doctrine that the judgment recovered must be secundum allegata et probata, has not been done away with by the Code, but still remains, and a judgment will not be sustained upon an issue which is not pleaded and litigated (Wright v. Delatield, 25 N. Y. 266 ; Kniffen v. McConnell, 30 Id. 285).
The plaintiffs made no motion to amend their complaint, but the judge at the trial, in denying a motion for a nonsuit made at the close of the plaintiff’s testimony, in part because of such proof as there then was of an express promise, said : “This promise, under the doctrine of Lawrence v. Fox, inured to the benefit of the plaintiffs so as to enable them to maintain an action upon it, and, if necessary, their complaint can be amended so as to embrace the express promise.” Nothing more occurred on this subject. The plaintiff's counsel said nothing indicating an acceptance of the permission of the court. The complaint was not in fact amended.. It stands now precisely as it originally *520 stood. The quotation above recites everything which-the appeal book contains on that subject, except that the only question submitted to the jury was whether or not there was an express promise. All the testimony with reference to an express promise, the ruling of the judge above quoted, and his submission of the question to the jury, were against the defendant’s objection and exception. If the amendment was one which the judge at the trial had authority to make, it may be made by this court nunc pro tunc (Reeder v. Sayre, 70 N. Y. 190); but, as it seems to me, it was not such an amendment as he was authorized to make. The power of a judge on a trial to amend is confined to matters which do not substantially change a claim or a defense [Code, § 723). His power is very different from that of a judge sitting at special term. The latter may permit almost any amendment, upon terms ; but it is error for a judge at a trial to permit an amendment which substantially changes a' claim or a defense. If he thinks the interest of justice demands such a change, he should stop the trial and give the párty an opportunity to apply at special term for leave to amend upon terms. Here was an action on the case—that is, arising out of special circumstances. The amendment would have changed it to an action on express contract—certainly a substantial change, and one which comes within the inhibition of section 723 (Van Sycles v. Perry, 3 Robt. 621 ; Ford v. Ford, 53 Barb. 525 ; Smith v. Rathburn, 13 Hun, 47, 53 ; Union Bank v. Mott, 19 How. Pr. 267; Phillips v. Melville, 17 Hun, 211: Joslyn v. Joslyn, 9 Id. 388; Sinclair v. Neil, 1 Id. 80).
As the amendment was one which the judge at the trial had no authority to make, it cannot be made now, and we must consider the case on the complaint as originally drawn. Under that, the evidence as to an express promise was not secundum allegata, and *521 should not have been received, nor should a recovery have been permitted on such a ground.
Second. Aside from the question of pleading, can this judgment be sustained on the ground that the defendants promised to pay the debt upon which the judgment was recovered % I think not. The doctrine of Lawrence v. Fox (20 N. Y. 268), that where A loans money to B upon B’s promise to pay A’s debt to C, G may maintain an action on the promise against B, will not be questioned. It need not be. But it may be said that that decision was by a divided court—Com-stock and Grover, JJ., dissenting—and that the court of appeals have ever since indicated a disposition not to extend the rule there adopted (Simson v. Brown, 68 N. Y. 355 ; Vrooman v. Turner, 69 Id. 280, Opin. by Allen, J.). It introduced an anomaly, contrary to all previous notions of privity of contract, and in England the doctrine, which once got a foothold on certain dieta, has since been entirely overthrown. It is, however, the settled law of this State. The question here is about its application to the facts of this case. The first objection to its application is that the defendants made no promise whatever to Bruff, the person who made the transfer (from whom, if any one, the consideration moved). And it is not proved that what they are alleged to have said to Douglass, was ever communicated to Bruff as the consideration or inducement of the transfer by him. To say that Erwin’s and Flint’s promise to Douglass to pay Douglass’s debts, not made to Bruff or communicated to Bruff, was the inducement for Bruff to convey, which will support an action by Douglass’ creditors against Erwin and Flint, is obviously an extension of the doctrine laid down in Lawrence v. Fox which it will not bear (Vrooman v. Turner, supra).
A most liberal construction of the doctrines of that case could not establish a privity of contract between the plaintiffs and defendants here. The consideration, *522 even admitting there was any, was too remote. The next objection is that the agreement between Douglass hnd the Russell & Erwin. Manufacturing Company as to what each should do, was in writing. I refer to the deed of indenture, dated and executed May 20, 1874, and exhibited to Bruff on that day. (Exhibit K.) That deed, after reciting the conveyance to Bruff of the property at Seymour and Arlington, Bruff’s declaration of trust, the indebtedness of Douglass in his own name, and in the name of the Douglass Manufacturing Company, to the Russell & Erwin Company, in consideration of the premises conveys to the Russell & Erwin company all Douglass’ right, title and interest to the premises, property and proceeds, and in any trust fund in the hands of Bruff—in short, everything in the hands of Bruff as trustee in any way connected with the Douglass Manufacturing Company, and calls upon Bruff to execute conveyances of the property in his hands and to transfer it to the Russell & Erwin Company. The Russell & Erwin Company on their part agreed that they would apply and appropriate the property to them- so conveyed, toward the accrued indebtedness of Douglass and the Douglass Manufacturing Company to them, and to the payment and indemnification of themselves for any liabilities under which they were, on account of Douglass or the Douglass Manufacturing Company, and for costs, damages, &c., and that, after so paying and idemnifying themselves, they would pay to Douglass any surplus or balance of said property that should remain, &c. This deed is signed by all these parties, was executed and was recorded. Certainly all prior negotiations were merged in it. It is a general rule of evidence and of contracts, as well settled as it is salutary, that a written contract executed between parties, supersedes all their prior negotiations and agreements on the same subject. This is especially true where the final contract is an executed one, and those -which pre *523 ceded it were merely executory, and more especially where what preceded were merely oral discussions and negotiations. This deed says' nothing about the payment by the Russell & Erwin Manufacturing Company of the debts of the Douglass Manufacturing Company. Any subsequent negotiations, unless moving upon some new consideration, were void. After this deed was executed, Douglass had nothing to convey, as the consideration for any new agreement. At any rate, there is no proof that he did convey or give anything. What consideration was there, then, to support any promise by the Russell & Erwin Company to Douglass, made in July, to pay the debts of the Douglass Manufacturing Company % Without consideration, any promise they made to pay the debt of the Douglass Manufacturing Company, was void under the statute of frauds (Belknap v. Bender, 75 N. Y. 446; Simson v. Brown, supra).
It comes to this: We are asked to hold the defendants liable for a debt of Douglass to the plaintiffs, because of an alleged promise by the defendants to Douglass without consideration, or because Bruff conveyed to the defendants, without any promise being made to him, the property to which, as cestuis que trust and owners of the equity, they were already entitled. On May 20, 1874, the defendants became the legal owners of whatever equity Douglass had in the property. They were already the cestuis que trust. Briefly stated, then, whatever negotiations occurred between the Russell & Erwin Manufacturing Company and Douglass, were merged in the deed of May 20, 1874. At any rate, parol proof must not be permitted to vary the obligations taken upon themselves by the parties to that instrument. Whatever negotiations occurred after that deed was executed, between Erwin and Douglass, were without1 consideration; and the performance of an .obvious duty by Bruff without any knowledge of the *524 alleged promise from the Bussell & Erwin Manufacturing Company to Douglass, cannot be regarded as a consideration and inducement to support a promise from the Bussell & Erwin Manufacturing Company to Douglass, to pay Douglass’ debts (See Belknap v. Bender, supra).
Third. What was said in this case, viewed in the aspect most favorable to the plaintiffs, did not amount to a promise that the defendants, out of their own moneys, would pay the plaintiffs’ claim. The testimony of the promise relied on is as follows :
“Q. In any of these talks was anything .said, and if so, what, as to what should be done with this indebt- • edness if all the property were transferred %
“A. Erwin said the business was to be prosecuted without change or interruption, a complete inventory taken, an entire account of the indebtedness which was to be paid without discredit to the Douglass Manufacturing Company. Mr. Stillman had a list of the liabilities, and confirmed what Erwin said to me—that all this indebtedness should be paid. This was before the property was completely turned over to the Bussell & Erwin Manufacturing Company and Mr. Flint. The indebtedness, outside of the Bussell & Erwin Manufacturing Company and Mr. Flint, amounted, I think, to §114,000. There was due the Bussell & Erwin Manufacturing Company §109,000, to Flint $91,000, to Ames §61,290.08. The entire amount was $391,000, viz. : due Flint $91,835.12, Mr. Ames §61.290.08. The Bussell & Erwin Manufacturing Company $124,053.50. All others §114,000. The consideration of the deed from Flint and the Bussell & Erwin Manufacturing Company to the Douglass Manufacturing Company, was the stock of the company.”
According to other testimony of Douglass, it occurred. “within forty-eight hours ’’ of the time when the Douglass Manufacturing Company, incorporated, was *525 formed. That company was formed July 24, 1874. The conversation occurred at Seymour at the time when Mr. Stillman went there to make some examination as to how he could secure Mr. Flint, and. Mr. Erwin was there for the purpose of securing the payment of the money due the Bussell & Erwin Manufacturing Company. It must constantly be borne in mind that the Bussell & Erwin Manufacturing Company at that time had a conveyance of all Douglass’ interest, executed the 20th of May previous. Stillman suggested the formation of a new company, and the testimony, fairly construed, indicates that they were discussing what should be done in the event of the formation of such a company. Is it, then, a fair construction of the testimony of Douglass, above quoted, to say that Mr. Erwin meant to engage that the Russell & JCrwin Manufacturing Company would, out of their own moneys, pay the entire floating indebtedness of the Douglass Manufacturing Company, viz., $114,000 ? Or that Mr. Stillman, who was there for no such purpose, by confirming what Mr. Erwin said,” meant to engage that Thompson J. S. Flint would, out of his own money, pay the debts of the Douglass Manufacturing Company? I think not. The testimony in the case all clearly shows that Thompson J. S. Flint was not present at any of these interviews, and that he personally made no promise whatever of this character. The claim against him in this action, rests upon what was said by Stillman, above quoted. There is no testimony in the case from which the inference can be fairly drawn that Mr. Stillman was so far his attorney in fact, as that his suggestion confirming Erwin,” could bind Mr. Flint to pay out of his own pocket the antecedent debt of another to the extent of $114,000. Without reciting the other testimony in relation to this subject, it seems to me a perversion of language to' claim that these defendants engaged to pay with their *526 own money the debts of the Douglass Manufacturing Company. At the very best, it was not an absolute and positive promise to pay to the plaintiffs, but a promise to Thomas Douglass to protect the Douglass Manufacturing Company. That was not enough to bring the promise within the rule laid down in Lawrence v. Fox (Garnsey v. Rogers, 47 N. Y. 233 ; Simson v. Brown, supra; Johnson v. Morgan, 68 N. Y. 494).
Fourth. The defendants, Woodruff, Erwin, the Flints, all deny that they made the promise testified to by Douglass ; so that the weight of evidence is, in my judgment, against the plaintiff’s claim. Certainly so when the fair interpretation of Douglass’ testimony standing alone does not clearly show that they meant to contract to pay the plaintiff’s claim.
The judgment should be reversed, and a new trial ordered, with costs to abide the event.
Sedgwick, Ch. J., and Speir, J. concurred.