VOLNEY G. BENNETT

v.

THE MERCHANTVILLE BUILDING AND LOAN ASSOCIATION et al.

F., a shareholder in the defendant company, procured a loan of $2,000 from said company, with the understanding that it should be advanced in parcels as required by F. to pay for the erection of a house on the lot which was given in mortgage as security; and to carry out this purpose the money was paid to S., one of a committee, who had special control. S. and F. had the further understanding that all of this money should be used towards the payment for lumber and materials required to build said house, and these facts were communicated to B., who furnished lumber for the house. S. appropriated $358.94 of these moneys to pay his own debt against F.—*Held*, that such appropriation by S. was unlawful, and that B. could bring his suit to recover that sum and any additional sum to the extent of his claim which had not been used according to the understanding, unless so used by the consent of B.

*Mr. H. M. Snyder*, for the complainant.

*Mr. Martin Bergen*, for the defendants.

Bird, V. C.

Bennett files his bill to recover of the defendant Stetson the sum of $500 and interest thereon, being the amount due upon a certain order which was given to him by Flannagan. The transaction out of which this claim originated I will present somewhat in detail. Flannagan, Stetson and one Conover were related by marriage, and Flannagan and Conover were about to build dwelling-houses. In order to do so successfully they procured loans, in the ordinary way, of the defendant company, Flannagan, upon his part, procuring about $2,000. Flannagan entered into a contract for the erection of his said house, the contract price being $2,100, $300 of which was to be paid when the foundation was laid, $500 when it was enclosed and roofed, $500 when ready for plastering, $350 when plastered, and $450 when finished, and accepted by Flannagan. This contract was duly filed. Bennett advanced lumber to Flannagan, and on the 5th day of January, 1886, $178.42 worth of lumber had been advanced, and upon that day Flannagan gave to Bennett two orders, one for $250 and one for $500. The first was made payable out of the second payment due on said contract, and the second out of the third payment. The second payment became due February 2d, 1886, and the third February 11th, 1886.

The defendant company appointed a committee to take charge of all moneys so loaned and to make payment thereof. Stetson, one of the defendants, was a member of that committee, and treasurer, and consequently made the payments. When the moneys came to his hands he had an interview with Flannagan, the builder and owner, and he himself admits that it was distinctly understood between them that the moneys in his hands should be appropriated to the payment of moneys due from Flannagan for materials and labor in the building of his house. It is also satisfactorily established that the fact that this money was raised for that purpose and was so held by Stetson was com-

municated to Bennett by Flannagan. The defendant company also understood that the money was to be so applied as the building progressed.

Bennett continued to advance lumber until the house was completed. Over $700 remains due to him for the lumber so advanced. But although he had these orders, the one for $500 has not been paid, and was never presented to Stetson until after the house had been completed. The weight of testimony leads me to this conclusion. Certainly, when presented, the payment against which it was drawn, had been exhausted.

At about the completion of the house, Flannagan and Stetson had a settlement, and it appeared that Flannagan owed Stetson the sum of $358.94, for money loaned, and for which Stetson held Flannagan's promissory note. Upon this settlement, this note was taken in the account, and was paid out of the moneys which had been loaned by the association to Flannagan, and which were understood, as between Flannagan and Stetson and the company, were to be used exclusively for the payment of the lumber and materials used in the construction of Flannagan's house. A day or two before this settlement and such appropriation of this money, Stetson was fully apprised of the amount still due to Bennett, and also of the order which was unpaid.

Under the law, is Stetson liable to Bennett for the amount of money which came to his hands and which has not been appropriated by him to the payment of the just liabilities of Flannagan for other lumber and material furnished, or labor performed in the construction of his house? In my judgment, he is so liable. It was an agreement between the two, that the money which belonged to Flannagan, then in Stetson's hands, should be and was thereby appropriated to the payment of any debts which had then been made or which should thereafter be made in the construction of Flannagan's house. And when the additional fact, that Flannagan communicated the important information to Bennett, that this money had been raised for such particular purpose, is taken into consideration, the case becomes still stronger in favor of Bennett. Though the promise was in writing, in *Joslin* v. *N. J. Car-Spring Co.*, *7 Vr. 141*, yet, I think the rea-

soning of that case may safely be applied to this. When a promise is made to discharge the debt of another, and funds or other valuable things taken or accepted for that purpose by the promissor, such promise becomes binding and can be enforced by the creditor. *Pruden* v. *Williams, 11 C. E. Gr. 210,* is one of many cases. Supposing such information had not been communicated to Bennett, still he would be entitled to his remedy. It was so distinctly held in *Lawrence* v. *Fox, 20 N. Y. 268.* In that suit, it was decided that an action lies upon a promise made by the defendant, upon a valid consideration to a third person, for the benefit of the plaintiff, although the plaintiff was not privy to the consideration. See, also, *Prime* v. *Kohler, 77 N. Y. 91,* and *Glen* v. *Hope Mutual Ins. Co., 56 N. Y. 379; Thorp* v. *Keokuk Coal Co., 48 N. Y. 253.* That such is the law, and that a verbal promise in such case is sufficient, are established in *Barker* v. *Bradley, 42 N. Y. 316.* The last case and others show that the holder of funds in such case is under direct obligation to discharge the duty according to his promise. In support of this view, see *Bank of Metropolis* v. *Guttschlick, 14 Pet. 19, 31.* In this case, the language of the court is : " That where a trust is created for the benefit of a third party, though without his knowledge at the time, he may affirm the trust and enforce its execution." See, also, *Mallory* v. *Gillett, 21 N. Y. 412,* and *Belknap* v. *Bender, 75 N. Y. 446, 451.* The following are other cases illustrative of the general doctrine: *Garnsey* v. *Rogers, 47 N. Y. 233; Vrooman* v. *Turner, 69 N. Y. 280, 282,* and *Campbell* v. *Smith, 71 N. Y. 26; Hand* v. *Kennedy, 83 N. Y. 149, 154; Schemerhorn* v. *Vanderhyden, 1 Johns. 139 (3 Am. Dec. 304),* and the very full note in the last-named book; *Smith* v. *Kemper, 4 Martin (O. S.) 409 (6 Am. Dec. 708); Arnold* v. *Lyman, 17 Mass. 400 (9 Am. Dec. 154 and notes; Dearborn* v. *Parks, 5 Me. 81 (17 Am. Dec. 206),* showing such contract not within the statute of frauds; *Kelly* v. *Evans, 3 Pen. & W. 387 (24 Am. Dec. 325); Robbins* v. *Ayres, 10 Mo. 538 (47 Am. Dec. 125).*

Therefore, Stetson is liable to pay to Bennett the $358.94, and interest from the time of his settlement with Flannagan, and also any other moneys which came to his hands and which have

not been applied to the payment of claims for lumber or labor, as indicated, until the whole amount due to Bennett has been satisfied. Stetson, having resisted this suit, is liable for costs.

It was claimed in behalf of Stetson that Flannagan had used $400 of these funds to pay another debt due to Bennett. This is not a defence, for it does not appear that Bennett knew it; and if he did, and both he and the debtor consented to such an appropriation, it does not change the rights of Bennett as against Stetson, who appropriated funds whlch Bennett was entitled to, without the latter's consent.

I will advise accordingly.