BARRY *v.* COVILLE *et al.*

*Supreme Court, General Term, Fourth Department.* February, 1891.)

1. CHATTEL MORTGAGES—IMPROVEMENT OF MORTGAGED PROPERTY—SERVICES OF MORT-GAGOR.

Plaintiff assigned to defendants a two-third interest in certain patents, and defendants agreed to furnish plaintiff with certain funds and goods so long as they were satisfied with the success of manufacturing the patented articles. The agreement also provided that, if after a certain time defendants became satisfied that it would not be profitable to them to continue their interest and obligations, they might terminate the agreement, with the right, however, to retain their interest as security for whatever plaintiff might owe them. While this agreement was in force defendants employed plaintiff to perform certain services in regard to improving the patents. *Held*, in an action to compel a reassignment of the patents, and for an accounting, after defendants had terminated the agreement pursuant to the provisions thereof, that plaintiff was entitled to the value of the services rendered by him under the employment.

2. APPEAL—REVIEW—WEIGHT OF EVIDENCE.

Where the evidence is conflicting, the finding of the referee will not be disturbed on appeal.

Appeal from special term, Onondaga county.

Action by William Barry against Orson Coville and another to compel the defendants, Coville & Morris, to reassign to plaintiff certain patents previously assigned to them by plaintiff, and for an accounting; it being alleged that said defendants had received royalties to a large amount, and were also indebted to plaintiff in a large amount for services performed by him in connection with improvements. The plaintiff also claimed to recover any balance that might be found due him. The action was brought to trial at a special term, December, 1888, where the main issue was as to whether an assignment, absolute in form and made the 13th April, 1885, was in fact held as collateral security for certain debts and obligations. Upon this issue the plaintiff succeeded, and in the decision of the court, after such trial, after setting forth the facts found, it was decided and adjudged that the plaintiff, upon the payment to the defendants of what might be due them, was entitled to a reassignment of the patents in controversy, and an interlocutory judgment to that effect was ordered, providing, among other things, for a reference to take and state the accounts between the parties, including the matter of royalties, and any services the plaintiff during the time in controversy may have performed for the defendants and at their request. It further provided that, upon the coming in of the report of the referee, either party might move for final judgment, and to settle the terms thereof. The question of costs was also reserved. An interlocutory judgment was entered accordingly, from which the defendants appealed to the general term, where the same was affirmed. 7 N. Y. Supp. 36. Thereafter the reference proceeded, and on June 20, 1890, a report was made, which, after setting out items upon both sides, found a balance due the plaintiff of $211.33, and that plaintiff upon the accounting was entitled to judgment in

his favor in that amount. The defendants filed exceptions to the report. Thereupon, at a special term held by the same justice who tried the case, the plaintiff made a motion to confirm the report, and for final judgment; and an order was made which, after reciting the reading and filing of the report and the exceptions, ordered that the report be in all things confirmed, and "that final judgment herein may be entered in favor of the plaintiff, and against the defendants, for the relief demanded in the complaint, and according to the provisions and findings of the interlocutory judgment herein, and especially adjudging and directing the defendants to execute proper conveyances and assignments of all the patent-rights and property mentioned in the complaint." Judgment was accordingly entered, and it included a provision that the plaintiff recover of the defendants the balance as found by the referee. The defendants in their notice of appeal state that they appeal from the judgment and from the order confirming the report of the referee, and intend to bring up for review the whole of the judgment, and the report of the referee, and the order of confirmation.

Argued before Hardin, P. J., and Martin and Merwin, JJ.

*B. N. Bailey,* for appellants. *Baldwin & Kennedy,* for respondent.

Merwin, J. The main question on this appeal is over the allowance by the referee to the plaintiff of the sum of $985 for services. The finding of the referee is that the defendants, Coville & Morris, are indebted to the plaintiff "for services performed for them, at their request, in and about and growing out of the patents and inventions, part of the subject-matter of this action, commencing November 12, 1884, and ending July 1, 1885, being 197 working days; and that I find that the value of said services to be worth $5 per day, and amounting to the aggregate sum and value of $985." This matter of services was within the scope of the reference, as provided for by the interlocutory judgment. It was a thing to be determined before the amount that the plaintiff equitably should pay before having a reassignment could be ascertained. It was a part of the accounting asked for in the complaint, and which the court in the interlocutory judgment adjudged that the plaintiff was entitled to have. It therefore follows that the point of defendants, that the judgment appealed from, so far as it affects the question of services, has no foundation in the original decision of the special term, and the interlocutory judgment thereon, is not well taken. The case of *MacNaughton* v. *Osgood,* 114 N. Y. 574, 21 N. E. Rep. 1044, does not apply.

It is, however, urged that whatever services the plaintiff performed were on the mortgaged property, and therefore he is not entitled to credit therefor. Under the agreement between the parties, dated October 2, 1884, the plaintiff assigned to defendants, Coville & Morris, a two-third interest in certain patents, and they agreed to furnish him with certain funds, and with goods and provisions, so long as they were satisfied with the success of the manufacturing and carrying forward the business under the inventions; and the agreement provided that, after a certain period, if the defendants became satisfied that it would not be profitable for them to continue their interest and obligations, they might terminate the agreement, with the right, however, to retain their interest as security for any indebtedness from the plaintiff up to the time of such termination. Under this provision, the defendants terminated the agreement on July 1, 1885; so that, during the time covered by the findings of the referee, the defendants were in the position of owners of two-thirds of the patents. The employment, as claimed by plaintiff, was subsequent to the contract of October 2, 1884, and was something that the contract did not require him to do. It was therefore competent for the defendants, if they so chose, to employ the plaintiff, and the fact that they afterwards voluntarily abandoned their ownership fur-

nishes no good ground for them to say that the plaintiff ought not to be paid according to their agreement. The statute of frauds does not apply. The work was at defendants' request, and presumably for their benefit. The case of *Belknap* v. *Bender*, 75 N. Y. 446, is not in point. There the promise was to pay a prior debt, and was without consideration. But the defendants further say that the evidence is not sufficient to sustain the finding of the referee. The record shows that no question is made on the appeal "of the value of plaintiff's services *per diem.*" The only things, then, to consider are whether the services were performed for the defendants at their request, and for the length of time as found by the referee. The plaintiff testifies that on or about November 12, 1884, at the special request of the defendants, and upon their promise to pay him for his time, he left other work at which he was then employed, and went to work upon improvements on patents in which defendants were interested, mainly a roller skate, and so continued until after the defendants terminated the original contract. There was some evidence that corroborated the plaintiff. The defendants denied the arrangement, and some circumstances were shown that corroborated their view. Where the truth was, was for the referee to determine, and we think his conclusion on that subject should not be disturbed. The referee charged the defendants with royalties to the amount of $722.35. The defendants claim the amount should be only $489.01. The evidence, however, is sufficient to sustain the referee on this subject. The referee allowed the defendants $1,196.70, "for amount of grocery account, $1,263.23, less $66.53, disallowed." The defendants claim there is no proof authorizing this disallowance. In this we agree with the defendants. There is proof from which it may be suspected that there was before the referee some statement as to errors in the grocery account, but no such statement appears in the record, and it is certified to contain all the evidence on this subject. We must therefore assume that it does. It follows that the credit to defendants should be increased by the sum of $66.53, with interest from February 9, 1887, and this will operate to reduce the judgment the same amount. Judgment and order modified, by deducting from the amount of the judgment against defendants the sum of $66.53, and interest from February 9, 1887, and as modified affirmed, without costs of this appeal to either party. All concur.