Martha Zelman, J.
Ms. Miriam Russ brings this suit in Small Claims Court for $5.60 damages for breach of contract of health insurance policy No. 117184761 and in the alternative for damages in the sum of $5.60 for nonpayment of Claim No. 3870361.
The unique characteristic of a small claim is that it is sued at by a layman without the benefit of counsel. The enabling statute for Small Claims Court dictates a simple, informal and inexpensive procedure for a determination of claims in accordance with rules of evidence. (CCA, § 1802.) To facilitate hearings in Small Claims Part, statutes and rules governing the practice in the regular Part of Civil Court are not followed. Rather the court is obliged to render substantial justice “according to the rules of substantive law ” (CCA, § 1804) but without regard to the rules of evidence or practice. It is the key that opens the door for the lay litigant to explain her case in her own way even if shrouded in hearsay.
The plaintiff, Ms. Miriam Russ is a New York City elementary school teacher in Public School 153Q. She is also a United Federation of Teachers union delegate for that school. Ms. Russ testified that she is a member of the United Federation of Teachers, Local 2, American Federation of Teachers AFL-CIO, *638 covering day school classroom teachers etc. She testified that, under an agreement between the Board of Education of the City School District of New York City and the UFT, dated September 9, 1972-September 9, 1975, article III E 2, entitled “Salaries and Welfare Benefits of Day School Teachers, subdivision E — Benefits: (1) Choice of Health Plans”: “ The Board agrees to arrange for and make available to each day school teacher a choice of health and hospital insurance coverage from among designated plans and the Board ágrees to pay the full cost of such coverage.”
Ms. Buss testified that prior to October 1,1973 she had elected to be covered by Blue Cross-Blue Shield and had a major medical policy with United Medical Service Inc. (hereafter referred to as UMS). That on September 26, 1972 she had submitted a Claim No. 364301965 to UMS for. a gynecological routine checkup with Dr. William J. Sweeney, III, and his office visit was $30 and some pathology tests were $3 and $2 respectively. Out of a total bill for $35 she had recovered 80% or $28.
She alleges that on October 1, 1973 (without notice to her of -any change of health plan) she was mailed an I.D. card from General Health Insurance Corp. (hereinafter referred to as GHI). Ms. Buss contends that she was told by the UFT that the coverage under GHI would be the same as under Blue Cross-Blue Shield — major medical. She therefore contends that she was arbitrarily denied her right to ‘ ‘ free choice of health and hospital insurance coverage ’ ’ as per her contract with the Board of Education. Had she been given her choices she could have selected GHI or Health Insurance Plan (hereafter referred to as HIP) which pays 100% of physician’s charge, if patient selects an HIP participating physician. The GHI Type “ E ” program herein involved permits the insured free choice of physicians located anywhere, and 80% of medical expense is paid to the extent insurer deems such expense to be reasonable, necessary and customary.
Ms. Buss claims she was “ given ” GHI plan. Ms. Buss submits a claim filed with GHI, Claim No. 3870361 for a similar gynecological routine checkup with the same Dr. William J. Sweeney, III dated August 17, 1973 wherein the office visit was $30 and the pathology tests being the same as the last claim were $2.50 and $2.50 respectively. She was allowed, by GHI method of payment, $23 for reasonable charge of office visit and $5 for pathology, 80%, bringing her benefit payment to $22.40. Therefore she is suing for $5.60. The difference is the *639 method of payment for the exact same service under Blue Shield and GHI.
Ms. Buss presents a "booklet which is dated July 1, 1970 and entitled ‘ ‘ Choice of Health Plans ’ ’. This is eoncededly a summary of the contract under Blue Shield, major medical (p. 30) entitled “What Expenses are Covered?” “ All expenses for medical care as shown in the booklet to the extent they are reasonable, necessary and customary [emphasis supplied] and performed and prescribed by a licensed physician or surgeon. ’ ’
Plaintiff’s present contract is summarized in a booklet dated . October 1, 1973, entitled “ Choice of Health Plans” (p. 20) “ Major Medical extends and broadens your doctor care! If cash allowances under the Basic Program do not cover expenses in full, the balance is picked up by Major Medical (GHI-Type E) * * * as a Covered Medical Expense, to the extent that such expense is reasonable, necessary and customary.” (Emphasis supplied.)
Defendant GHI contends, through testimony of Ms. Bertha Skittower, secretary of GHI, that the previous contract between the City of New York and TTMS, and the current contract of the City of New York and GHI for the period of October 1973-Sep-tember 30,1974 are the same and executed subject to the approval of the Insurance Department of the State of New York as required by law.
Defendant maintains that the meaning of ‘ ‘ customary ’ ’ is as found in Random House Dictionary:
‘ ‘ 1. According to or depending on custom, usual; habitual.
“2. Of or established by custom rather than law * * * defined by long continued practices.”
‘ ‘ Reasonable ’ ’ is defined as:
‘ ‘ 1. Agreeable to or in accord with reason or sound judgment, logical.
“ 2. Not exceeding the limit prescribed by reason; not excessive, reasonable terms.
‘ ‘ 3. Moderate in price; not expensive ’ ’.
Defendant introduced testimony establishing ‘ ‘ fee profiles ’ ’ and ‘ ‘ prevailing screen ’ ’ as set forth in contract. A fee profile is a history of each individual doctor involved, showing his record of fees for his patients for same services. In this case, Dr. Sweeney had a history of 35 patients, GHI subscribers, and his average fee for them was $18 while he had charged Ms. Russ $30. A prevailing screen was the record of fees charged by other *640 gynecologists rendering routine checkups with regard to geographical location. For example:
Manhattan
7505 observations .............. $23 reasonable fee
Bronx
2945 observations .............. $18 reasonable fee
Queens
7396 observations .............. $18 reasonable fee
Brooklyn
8265 observations .............. $18 reasonable fee
This testimony was adduced by witness Harvey Friedman, vice-president of the Electronic Data Processing Corp.
G-HI contends that it refused to pay plaintiff her claim of 80% of Dr. Sweeney’s fee because it was not “reasonable or customary ”, and conceded that it was necessary which is what their contractual obligation was.
What is at issue here is — Query “one”: Was plaintiff denied her free choice of plans ? As to this contention, the court must rule that she should have brought or maintained a separate action against the UFT and/or the City of New York, who would be responsible for her denial of'free choice. This action is severed and dismissed without prejudice.
Query “ two ”: Was the interpretation of the phrase “ reasonable, necessary and customary ” under the contract by UMS proper or was the interpretation of the same phrase by G-HI proper? Is G-HI bound by the prior precedent set as to method of payment made by UMS ?
Defendant alleges that G-HI, the insurer under its contract administration is closely supervised and regulated by the Insurance Department of the State of New York and its payments must meet with their approval. All payments made for benefits under group health insurance contracts must be made in a uniform, nondiscriminatory manner consistent with the purposes of maintaining medical coverage at a low rate (see Insurance Law, '§ 209, subd. 2).
In Moeller v. Associated Hosp. Serv. of Capital Dist. (304 N. Y.), the Court of Appeals held that benefit provisions of health insurance contracts should not be strained and extended where to do so would result in higher premiums and defeat the purposes of these programs which attempt to bring medical service to a large segment of the community at low cost.
In the Matter of Subscriber Rate Increase Applications of Blue Shield of Western N. Y., UMS Inc., and Associated Hosp. *641 Serv. of Greater N. Y. the New York Superintendent of Insurance on February 15, 1973 issued a decision in which he stated: iC UMS is further directed to review the experience of each group now experience rated, including the City of New York contract, and restore the premium rates on such policies to levels which are self-supporting on reasonable assumptions and make a modest contribution to surplus no later than the next renewal of such policies to restore such groups to community rating. In addition UMS is expected over time to recoup the losses suffered on all its experience rated business to date and restore such funds to its surplus account * * * From 1969 until the present, 15 million dollars of the surplus was consciously and systematically expended through increases in benefits and decreases in rates for community-rated subscribers, much of it through ‘ administrative ’ increases in benefits. These kind of increases in benefits came about when UMS as an administrative matter decided to pay certain benefits for which they were not obligated by subscriber contract to provide * * * the principal objection to this practice is the uneven application of it among subscribers, who without a clear contractual provision to refer to, may not present claims for payment. UMS is therefore directed to pay claims in accordance with applicable contract provisions.”
GHI therefore contends it is paying in strict conformity with the conditions of its contract with the city. The city came in through its witness Jeffrey S. Kahan who testified that the contract was being properly, administered by GHI and city was satisfied. The court must uphold the GHI position that an improper payment of UMS is, not binding on the present carrier. Plaintiff has been unable to show how UMS arrived at its payment in paying prior claims. Therefore, court must rely on insurance report showing that UMS method of payment resulted in great losses and sharp criticism.
GHI must be upheld in that, if we are to have medical programs covering community groups, payments must be strictly made in conformity with contract and must be uniform and nondiscriminatory.
This court after careful consideration finds that GHI is paying in conformity with its present contract, which is 80% of medical expenses covered “ to the extent that such expenses are reasonable, necessary and customary * * * payment determination to be made strictly on the basis of the doctor’s charge, his fee profile or the prevailing screen * * * whichever is the least. ”
*642 In the within case Dr. Sweeney was overcharging this particular plaintiff. Out of 35 patients his customary routine check-up fee averaged out to be $18, while he overcharged Ms. Buss.
The next question raised by defendant GHI was — Is plaintiff, a third-party beneficiary, a proper party to this action ?
GHI maintains that Ms. Buss, the subscriber, was not a proper party and the union (United Federation of Teachers) should have been a party plaintiff. This contention must fall under the old principle of Lawrence v. Fox (20 N. Y. 268). The court held that an action lies on a promise made by defendant upon valid consideration to a third person for the benefit of plaintiff, although the plaintiff was not privy of the consideration. (Matlory v. Gillett, 21 N. Y. 412, 420; Burr v. Beers, 24 N. Y. 178, 180; Becker v. Torrance, 31 N. Y. 630, 643; Van Schanck v. Third Ave. R.R. Co., 38 N. Y. 346, 354.)
As early as 1806, it was held by Supreme Court of Judicature of this State “ that where one person makes a promise to another for benefit of a third person, that third person may maintain an action on such promise. (Schermerhorn v. Vanderheyden, 1 John S. 139, 140.) The court finds, under this theory, plaintiff was a proper party to bring this action against GHI to enforce contract entered into for her benefit by the City of New York and GHI.
The court recommends for consideration the following:
The issue of health care is too important a community problem for squabbling. If the UMS loss experience is to be considered, if the proper method of payment is not reached, we may find ourselves without medical programs. We must find a formula of payment to satisfy the health insurance company and the subscriber (the consumer).
While this court would not be so presumptuous as to attempt to change the present contract of the parties, nor does the court wish by its interpretation, to enlarge the contract between the parties, it behooves GHI to make a re-evaluation of its present method of payment, i.e.—
1. The contract of health insurance is a contract covering teachers, city-wide, payment is being made on observations borough-wide. Prevailing screens should be city-wide lest it discriminate against teachers in Queens, Brooklyn, Bichmond and The Bronx to the advantage of Manhattan. A specialist sets his fee according to his experience, medical background, hospital status, professional achievements. Surely the specialist in Queens does not stop to think about the specialist in Manhattan and his economics.
*643 2. In compiling individual doctor profiles, the subscriber may be the innocent victim of overcharge 'by her doctor. She is not informed of his fee profile; she has no knowledge of 1 ‘ why ’ ’ her claim is rejected. The subscriber is entitled to be informed of such existent doctor profile. This will curtail and curb possible overcharges on the part of doctors.
3. Individual contracts should be furnished subscribers (not summaries in booklets). Educational programs as to hospital benefits should be implemented by unions so city employees can know, once and for all, how the health program works.
4. Present method of payment shows no regard for differences, of medical expertise of doctors. An appeal mechanism should be established, where rejected claims, may, if the subscriber so seeks, be re-examined by a panel of physicians.
5. It should be considered that a fee schedule carefully worked out by a panel of doctors of that particular field, city-wide, and approved by Insurance Department of the State of New York, might bring more equity to all concerned in alerting subscriber to enlightened method of payment of benefits.
The continuance of successful medical programs is at stake here. We must assure the community of quality care for all with health insurance programs providing equal and even standards of health protection. To pay benefit claims unequivocally and recklessly will result in catastrophe when illness strikes. The court emphasizes that these objectives can only be assured where subscribers are enlightened as to services and costs. There must be a happy marriage between a good health insurap.ee program and proper payments of benefits to assure subscribers that they can seek good health care through routine checkups, examinations and tests and receive some fair standard of benefit payments.
Judgment for defendant.